*In re* JOSEPH B., a Minor (The People of the State of Illinois, Petitioner, v. Phynise B., Respondent-Appellee (Joseph B., Appellant)).

First District (6th Division)   No. 1—92—1785

Opinion filed February 19, 1993.

Patrick T. Murphy, Public Guardian, of Chicago (Kathleen G. Kennedy and Ellen Gorin, of counsel), for appellant.

Rita A. Fry, Public Defender, of Chicago (John T. Kennedy, Assistant Public Defender, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Minor-appellant Joseph B. appeals from an order of the circuit court dismissing the petition for adjudication of wardship filed in his behalf. He contends that the trial court's decision was against the manifest weight of the evidence and in total disregard of his best interests.

On May 14, 1992, a petition for adjudication of wardship was filed on behalf of the minor-appellant. It alleged that the "minor is dependent in that the minor is without proper care because of physical or mental disability of his/her parent, guardian, or custodian in violation of Illinois Revised Statutes (1989), Chapter 37, paragraph 802—4(b)."

At a hearing on temporary custody, Department of Children and Family Services (DCFS) worker Lamont Gilmore testified that the minor was born on May 9, 1992, suffering from multiple withdrawal symptoms. The minor's mother, respondent herein, tested positive for cocaine at the time of his birth, but the minor's test results were negative. Dr. Jain, the child's doctor, told Gilmore that either respondent's medication accounted for the child's negative toxicology and withdrawal symptoms, or the withdrawal symptoms could have resulted from the prior use of some other drug that was not present in his system at the time he was tested. Gilmore also testified that a hospital social worker told him that the child's mother was a schizo-

phrenic who displayed erratic behavior. The social worker expressed her concern about the risk of harm to the child in respondent's care.

Gilmore stated that respondent lived in a room at a shelter where he believed that she was allowed to keep a child. He testified that respondent told him that she was currently involved with alcohol and that she had a problem with cocaine. She agreed that it might be best if DCFS took temporary custody of the child. She also told him that she was currently in a treatment program for her mental illness and did not feel quite ready for child care in light of her problem with substance abuse. Gilmore testified that Reverend Dorothy Hinley from the shelter told him that respondent's behavior was erratic and that she brought drugs and alcohol into the shelter. The shelter staff also had serious concerns about respondent bringing the child to the shelter. Gilmore recommended that the DCFS be given temporary custody of the child. He stated that his concern about the risk to the child was exacerbated by the fact that another child had already been removed from respondent's custody.

Following argument, the trial court ordered that the child be retained in protective custody and continued the case until May 15, 1992, at which time it appointed a temporary custodian for the child without prejudice to the mother. However, on May 18, 1992, the trial court ruled that there was no probable cause to believe the child was neglected or dependent, and the court vacated the temporary custody order and dismissed the petition for adjudication. Relying on *Nyce*, the trial court stated:

> "The scope of the authority of the Circuit Court that deals with minors under Section 702—4 [currently 802—3] is limited to minors who are actually neglected and does not extend to those who are thought to be subject to neglect in the future.
>
> That's the first appellate court case from the State of Illinois, 1971, which to my knowledge has not been reversed in any fashion or modified in any drastic fashion at all.
>
> We cannot conceive of how the allegations of the petition could have been established in a case such as the present where it is clear from the record that the parent never had custody of the child."

See *In re Nyce* (1971), 131 Ill. App. 2d 481, 487, 268 N.E.2d 233.

■ Initially, respondent contends that this appeal is not from a final order and should not be allowed. However, the supreme court has previously considered the issue in *In re J.J.* (1991), 142 Ill. 2d 1, 12, 566 N.E.2d 1345, and determined that the dismissal of a petition for

adjudication of wardship, even without prejudice, is final as to the child.

■ In Illinois a trial court's findings concerning a petition for adjudication of wardship will not be disturbed on appeal unless contrary to the manifest weight of the evidence. (*In re T.H.* (1986), 148 Ill. App. 3d 877, 882, 499 N.E.2d 988.) The best interest and welfare of the child is the standard applicable to proceedings under the Juvenile Court Act. (*In re Stilley* (1977), 66 Ill. 2d 515, 521, 363 N.E.2d 820.) "In any hearing under this Act, proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." (Ill. Rev. Stat. 1991, ch. 37, par. 802—18(3).) "When faced with evidence of prior abuse by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury." *In re Brooks* (1978), 63 Ill. App. 3d 328, 339, 379 N.E.2d 872.

■ In the case at bar the trial court relied heavily on *Nyce,* which held that section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1967, ch. 37, par. 702—4), now section 2—3 of the Juvenile Court Act (Ill. Rev. Stat. 1991, ch. 37, par. 802—3), was limited to minors who were actually neglected and did not extend to those who are thought to be subject to neglect in the future. (131 Ill. App. 2d at 487.) However, in that case there was no evidence of prior abuse or neglect of another child by the parent or the removal of that child from the home as we have in the instant case. Further, the case at bar does not involve neglect under section 2—3 of the Act as in *Nyce,* but dependency under section 2—4. There a dependent minor is defined as one "who is without proper care because of the physical or mental disability of his parent." (Ill. Rev. Stat. 1991, ch. 37, par. 802—4(b).) We know of no case law, nor has the respondent presented us with any, that holds that a child must be in the custody of his mentally disabled parent before he can be declared dependent. Such a holding would fly in the face of the purpose of the Act, which is to secure care for each minor that "will serve the moral, emotional, mental, and physical welfare of the minor." Ill. Rev. Stat. 1991, ch. 37, par. 801—2(1).

■ Here, the evidence clearly indicated that respondent was seriously mentally ill and exhibited erratic behavior as well as abusing alcohol and drugs. The social workers, who had knowledge of her behavior, believed that she was not capable of caring for her child. It was also reported that the administrator and the staff of the shelter where respondent resided had serious concerns about respondent bringing the child there. We find that the standard recited in *Nyce*

was not applicable to this case and that the trial court erred in dismissing the petition for adjudication of wardship.

Accordingly, the judgment of the circuit court is reversed, and the matter is remanded for further consideration in light of this order.

Reversed and remanded.

McNAMARA, P.J., and GIANNIS, J., concur.