618 N.E.2d 374 (1993)
248 Ill. App.3d 76
187 Ill.Dec. 783
In re B.M. et al.
(The People of the State of Illinois, Petitioner-Appellant, v. Barbara M. et al., Respondents-Appellees.
No. 1-92-4034.
Appellate Court of Illinois, First District, Fifth Division.
May 28, 1993.
*375 Patrick T. Murphy, Chicago (Kathleen G. Kennedy, of counsel), for minors-respondents-appellants.
Rita A. Fry, Public Defender of Cook County (Lynn Flanagan Wilson, of counsel), for respondents-appellees.
Justice McNULTY delivered the opinion of the court:
The State appeals the dismissal of their petitions for adjudication of wardship of three-year-old B.M. and his 11 year-old-sister L.B. The juvenile court conducted a temporary custody hearing on petitions to adjudicate B.M. and L.B. wards of the court due to parental neglect. At the hearing, Beverly Jordan, investigator from the Division of Child Protection of the Illinois Department of Children and Family Services (DCFS), testified that around noon on September 13, 1992, B.M.'s parents brought their son to Ravenswood Hospital. B.M. had a knife wound to his stomach and his "guts were hanging out." According to a nurse, the parents did not know how B.M. received the wound.
A week after the incident, Jordan spoke with B.M.'s parents. The father told Jordan that he was in bed at the time of the incident and therefore did not know how B.M.'s injury occurred. The father also told Jordan that the night before the incident he and his brother were out on their boat drinking. When they returned home at about 2 a.m., the father went to bed, leaving his pocket knife in his pants pocket.
Jordan also spoke with Elizabeth Powell, a physician with Children's Memorial Hospital. Powell stated that B.M.'s wound was located under the left rib cage near the bowel, but did not cause any internal damage. There were no other marks or bruises found on B.M.'s body and a bone survey showed no visible previous bone breakage. Powell stated that a three-year-old could inflict this kind of injury on himself but it would take a lot of force. Powell stated that the parent's explanation of how B.M.'s injury occurred was inconsistent with B.M.'s injury. Powell stated that this case was "very bizarre" and that B.M. did not "show any kind of normal responses for the type of trauma he had been through." Specifically, he did not flinch or cry when he was inserted with intravenous. Powell suspected that B.M. suffered from battered child syndrome personality. She referred the case to Dr. Levine for a psychiatric evaluation, but Dr. Levine did not believe B.M. was a battered child.
Mary Gazda a social worker employed by the hospital told Jordan that "never in the history of Children's Memorial Hospital had they seen an injury like this given by a three year old to himself." The protective service team determined that even though *376 they could not say that someone actually stabbed B.M., the case was "highly suspicious."
At the hospital, B.M. did not say anything regarding how he received his injury. The police officers to whom Jordan spoke said that B.M. told them that he was playing with a knife and injured himself. The police concluded that B.M. was strong enough to open the pocket knife himself.
B.M.'s mother first told the hospital staff that she believed B.M. was injured while playing outside. She told Jordan that B.M. was injured while playing with his father's pocket knife. The mother told Jordan that B.M. informed her that he had stabbed himself. One of the nurses noted that the mother seemed nervous and jittery.
B.M.'s uncle told Jordan that the morning of the incident, he watched TV with B.M. while B.M.'s parents slept. B.M. asked to go outside. Because the back door was broken, the uncle went out the front door and opened the back door from the outside. When the uncle returned, B.M. was sitting on the couch, clutching his stomach. The uncle saw B.M.'s "guts hanging out." The uncle woke B.M.'s parents and the parents took B.M. to the hospital. The uncle said that he noticed the stab wound at about 9:30 a.m. The hospital report indicates that the parents did not bring B.M. to the emergency room until around noon.
Jordan also spoke to the maternal grandmother, Linda White. White stated that B.M. and L.B. are being emotionally abused in their home, the children are not being treated right, the children are not fed properly, and the home has no heat or gas. Jordan observed several black hoses running to the kitchen, reportedly used to heat water. She was not able to verify that the gas or heat were working in the home, but she had been told that the home had both. White told Jordan that L.B. and her friend were going to call the hotline because they observed Barbara using cocaine in the kitchen. According to White, Barbara's first priority is drugs.
Jordan referred the parents to the Family First program for services. The parents did not want the Family First worker to come to their home twice a week and the parents did not want any services. Also, the parents did not bring B.M. to a scheduled follow-up surgical appointment.
On the basis of this evidence, the State sought temporary custody of the children, and the children's attorney and guardian ad litem sought a finding of probable cause, with the children remaining in the custody of the parents under a protective order. The court found no probable cause and no immediate necessity and dismissed, the petitions for adjudication of wardship.
In this appeal, we must determine whether the trial court erred in failing to find probable cause and dismissing the petitions for adjudication of wardship. Initially, respondents contend that this appeal is not from a final order and therefore should be dismissed. However, the court in In re Interest of Joseph B. (1st Dist.1993), 243 Ill.App.3d 339, 183 Ill.Dec. 782, 612 N.E.2d 39, found that the dismissal of a petition for adjudication of wardship is final and appealable. See also In re J.J. (1991), 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345.
Turning to the merits, we note that the best interest and welfare of the child is the standard applicable to proceedings under the Juvenile Court Act. (In re Carlenn H. (1989), 186 Ill.App.3d 535, 134 Ill.Dec. 613, 542 N.E.2d 959.) Because injurious environment is an amorphous concept which cannot be defined with particularity, each case should be reviewed considering the specific circumstances of that case. (In re S.D. (1991), 220 Ill.App.3d 498, 163 Ill.Dec. 207, 581 N.E.2d 158.) The determination of neglect lies within the province of the trial court and its findings will not be disturbed on review unless contrary to the manifest weight of the evidence. In re S.D., 220 Ill.App.3d 498, 163 Ill.Dec. 207, 581 N.E.2d 158.
A petition for adjudication of wardship is to be dismissed if the courts find no probable cause to believe the minor is abused, neglected or dependent. (Ill.Rev.Stat.1989, ch. 37, par. 802-10(1).) The State urges us to conclude that a finding of probable cause requires only a scintilla of evidence. However, no statutory or case law has found the proper standard in a temporary *377 custody hearing to be a scintilla of evidence. Moreover, it is within the province of the legislature and not this court to change burden of proof.
Based on our review of the record, we do not find the trial court's decision to dismiss the petitions for lack of probable cause to be against the manifest weight of the evidence. Evidence established that B.M.'s father inadvertently left his knife in his pants pocket. B.M. informed the police and his mother that he had injured himself while playing with his father's pocket knife. The police found that B.M. was strong enough to open the knife. Although B.M.'s parents were asleep at the time of the incident, B.M. was being supervised by his uncle. A psychiatrist determined that B.M. was not a battered child, the hospital staff found no other bruises or marks on B.M.'s body, and a bone survey showed no previous bone breakage.
The State believes that the trial court failed to take into consideration the out of court statement of B.M.'s grandmother that B.M.'s mother uses drugs. The record reveals that the trial court did in fact consider the grandmother's hearsay testimony but simply assigned it little weight. Furthermore, while the grandmother told Jordan that there was no heat or gas in the house, there was also evidence that the house did have the appropriate utilities. In addition, there was testimony that B.M.'s behavior was strange, and the parents failed to take B.M. to his follow-up appointment at the hospital. However, it is not our prerogative to reweigh the evidence and the record presented simply does not allow us to determine that the trial court's decision was against the manifest weight of the evidence.
Accordingly, the trial court decision to dismiss the State's petitions for adjudication of wardship is affirmed.
Affirmed.
GORDON, P.J., and MURRAY, J., concur.