In re M.K. *et al.* (The People of the State of Illinois, Petitioner-Appellee, v. Janie M. Kinkaid, Respondent-Appellant).

Fourth District    No. 4—94—0525

Opinion filed April 13, 1995.

J. Steven Beckett, of Beckett & Webber, P.C., of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

David A. Fernandes, of Urbana, guardian *ad litem.*

JUSTICE LUND delivered the opinion of the court:

The circuit court of Champaign County found Janie Kinkaid's minor children, K.K. (born March 4, 1981) and M.K. (born July 19, 1983), to be abused and neglected. The trial court placed custody and guardianship of the children with their father, Dennis Kinkaid, who

resides with his current wife in Iowa. Janie now appeals the adjudication of abuse and neglect and placement of custody with Dennis Kinkaid. We affirm in part, reverse in part, and remand with directions.

On January 28, 1994, the State filed a two-count complaint alleging the children were neglected and abused. Count I alleged neglect by reason of an injurious environment. Count II alleged abuse by Janie for creating a substantial risk of physical injury to the children by other than accidental means and for acts which would likely cause impairment of the emotional health or bodily functions of the children.

A shelter-care hearing was held on January 28, 1994. The court found there was probable cause to believe the children were neglected and abused, that it was a matter of immediate and urgent necessity that a temporary custodian be appointed, and that DCFS made reasonable efforts to prevent or eliminate the need for removal of the children from their home. Dennis was appointed temporary custodian of the children.

An adjudicatory hearing was held on April 4, 1994. Francis Austin, a child-protection investigator with the Department of Children and Family Services (DCFS), related the following. Kevin McDuffie was Janie's paramour. In early January 1994, Austin took protective custody of McDuffie's four children, based upon a report that he had physically abused one of his children. McDuffie's children were living with him, Janie, and Janie's children. Austin had a meeting with Janie on January 7, 1994. He informed her that K.K. and M.K. were in a risky situation and it would be a good idea if they did not have any contact with McDuffie. Janie indicated she would take some action, but she did not believe McDuffie had abused his children. He never told Janie or McDuffie that it was permissible for McDuffie to move back in with Janie.

On cross-examination, Austin stated that McDuffie had four prior involvements with DCFS. He explained to Janie that if she allowed McDuffie to be around her children, they would be taken into protective custody. Austin interviewed K.K., who stated the alleged incident of McDuffie abusing his son never happened. K.K. was not in the room when it allegedly occurred, but she said she would have heard the abuse if it had occurred. M.K. told Austin he was in the room at first and then left. According to M.K., McDuffie came in and yelled at his sons, but M.K. did not see him hit any of them. M.K. told Austin that McDuffie never hit anyone in the house.

Sandra Daniel testified to the following. She had interviewed M.K., K.K., and Janie on January 27, 1994, the day before the shelter-care hearing. According to Janie, the children went to the home of

McDuffie's mother on January 7, 1994, and returned on January 10, 1994. McDuffie moved out from January 10 to January 13, 1994. McDuffie told Janie that his caseworker, Marilyn Walker, said it was okay for him to move back in. Janie denied that McDuffie abused his children. She had never seen him do so, and she did not see any risk to her children. K.K. and M.K. told Daniel that McDuffie was residing with the family. M.K. stated McDuffie was engaged to Janie. The children stayed at the home of McDuffie's mother for a few days, and then moved back home. K.K. stated that McDuffie moved in with the family a few days later. Both children said neither they nor McDuffie's children had ever been abused by him. They also stated McDuffie had a bad temper, became frustrated, and tended to lose control of his temper. Dennis reported to Daniel that neither child had ever mentioned being abused.

Marilyn Walker related the following. She had a phone conversation with Janie about McDuffie on January 20 or 21, 1994. Janie wanted to know if McDuffie could reside with her and her children. Walker told her DCFS was not legally responsible for her children. Walker made her aware of the risk factors; namely, if McDuffie shared a residence with her, she risked losing K.K. and M.K. based upon his actions with his sons. Walker did not give permission for McDuffie to reside with them again.

On cross-examination, Walker reported telling Janie that if McDuffie resided with K.K. and M.K., they were in danger of being physically abused; if he had abused his own children, there was nothing to stop him from abusing K.K. and M.K. Janie indicated she did not believe McDuffie abused his children. She did not have a safety plan if McDuffie resided with them. Walker did not tell Janie that DCFS would take custody of K.K. and M.K. if McDuffie resided with them.

Janie Dawson, Janie Kinkaid's mother, testified to the following on behalf of Janie. She lives in Rock Falls, Illinois. She supervised three visits between Janie and the children, and McDuffie was present at two of those visits. He relates well to the children. They like him very much and are not frightened by him. Dawson had visited Janie and the children on three prior occasions. McDuffie's children were present on those occasions. Dawson saw no physical abuse and had no concerns that it had occurred. Janie indicated to Dawson in March 1994 that she did not believe McDuffie had abused his children.

The guardian *ad litem* (GAL) called Marilyn Walker as a witness. Walker stated Oscar Gipson allowed Dawson to supervise two visits on February 18 and March 6, 1994, because of the distances involved.

Walker and Gipson were aware that McDuffie would be present at the visits. McDuffie was allowed visitation with the children because he and the children had indicated they had a relationship. DCFS was working toward a reunification of the children with both Janie and McDuffie.

The trial court rendered its order based upon the foregoing evidence. The court noted an adjudicatory order dated March 8, 1994, finding McDuffie's children to be neglected and abused. The order found that McDuffie creates a substantial risk of physical injury to his children which means, the court noted, that he is a continuing risk to his children. Since he was a continuing risk to his own children, the court found him to be a continuing risk to K.K. and M.K. The court found Janie's decisions suspect, because she allowed McDuffie to reside with her and the children when he was a risk to the children. Specifically, the court found K.K. and M.K. to be neglected because they have an environment injurious to their welfare when they reside with Janie. The court also found K.K. and M.K. to be abused, because Janie allows McDuffie to reside with them and creates a serious risk of physical injury to them, by other than accidental means, likely to cause impairment of emotional health or bodily functions.

At the dispositional hearing, the court considered the home and background report and addendum thereto (background report). Oral corrections were made to the report. The GAL noted that K.K. and M.K. were not always happy living with Dennis. Janie indicated that McDuffie moved out of her residence several days after the April 4, 1994, adjudication. She also indicated she thought the problem could be resolved and that she was working hard to achieve a resolution.

The GAL recommended that Janie have unsupervised visitation with the children and that McDuffie have no contact with the children unless supervised by DCFS or a responsible person. The GAL noted the children were anxious to return home to their mother. They like McDuffie very much and want to have a relationship with him. The GAL disagreed with the background-report recommendation that Dennis be given guardianship of the children and recommended that DCFS have guardianship of the children for two reasons. First, DCFS would be able to pay for counseling for K.K. Second, DCFS could ensure that K.K. received the counseling.

The State's Attorney recommended that DCFS be given guardianship of the children so that DCFS could monitor the case and because the children ultimately wished to be reunited with their mother. The State had no objection to limited, unsupervised visitation by Janie, or to supervised visitation by McDuffie if it were monitored by DCFS or someone other than Janie.

Janie agreed with the recommendation of the GAL. Since she wanted her children back in time for them to begin school in August, she asked the court for either (1) a bifurcated order that would allow discretion for extended, unsupervised visitation before the next review hearing, or (2) a shorter review period.

Dennis asked the court to adopt the recommendations in the background report. Those recommendations included: (1) Dennis to retain custody of K.K. and M.K.; (2) Janie's visitation to remain supervised; and (3) Dennis to cooperate with DCFS regarding the children's medical, educational, emotional, and social needs. Dennis recommended that Janie be given supervised visitation until she received counseling, and then it could be determined whether she should be allowed unsupervised visitation. Dennis did not think McDuffie should have any visitation with the children since he is not related to them.

The court made its decision and discussed its reasoning as follows. It was a juvenile court, not a dissolution court. Also, there were over 400 active cases, and over 1,000 children in foster placement. The court's function ends when the children are placed with a biological parent who is adequately caring for them. Furthermore, there is no legal basis to terminate a fit parent's guardianship and custody of his or her children and place guardianship and custody with a third party, such as DCFS or Janie. The court's responsibility was to determine the children's best interests today, not six months later. The function of a juvenile court is not to pick between two parents, but to place the children in a permanent, safe environment. The court found the children to be abused and neglected. Janie was found to be unable, for reasons other than financial circumstances alone, to care, protect, train, and discipline the children. It was determined that reasonable and appropriate services had been unavailing in removing the circumstances leading to those findings. Dennis was appointed custodian and guardian, subject to reasonable visitation by Janie. There was no jurisdiction over McDuffie, so the court could not order visitation by him. The court found it in the best interests of the children that the petition and cause be dismissed.

The GAL made an oral motion to reconsider. K.K. had indicated to the GAL, within the last two weeks, that she did not see anything wrong with suicide. She knows DCFS wants her to receive counseling, but she sees DCFS as 75% of the problem. DCFS could guarantee K.K. would receive the counseling she needed. Nothing in the report indicated Dennis had taken steps to obtain counseling for K.K.

The court denied the motion for several reasons. First, there is nothing to suggest Dennis is unable or unwilling to address those

concerns. Second, in light of K.K.'s perception of DCFS, counseling sponsored by DCFS will likely fail. After an inquiry by the court, Dennis indicated that he has the financial ability and emotional capacity to take the steps in the best interest of K.K. He indicated this was the first time he was aware of K.K.'s emotional problems.

Janie raises three arguments on appeal. First, she claims the trial court's finding that K.K. and M.K. were abused and neglected was against the manifest weight of the evidence. The Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3(1), (2) (West Supp. 1993)) defines neglected and abused minors in part as follows:

"(1) Those who are neglected include:
\*\*\*
(b) any minor under 18 years of age whose environment is injurious to his or her welfare; or

\* \* \*

(2) Those who are abused include any minor under 18 years of age whose parent \*\*\* or any individual residing in the same home as the minor, or a paramour of the minor's parent:
\*\*\*
(ii) creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function."

In general, "neglect" is the failure to exercise the care that circumstances justly demand and encompasses both wilful and unintentional disregard of parental duty. The term is not one of fixed and measured meaning, and it takes its content from the specific circumstances of each case. (*In re B.T.* (1990), 204 Ill. App. 3d 277, 280, 561 N.E.2d 1269, 1272.) An "injurious environment" is an amorphous concept which cannot be defined with particularity; therefore, each case should be reviewed considering the specific circumstances of that case. (*In re S.D.* (1991), 220 Ill. App. 3d 498, 502, 581 N.E.2d 158, 161.) Parents have the duty to protect their children from harm, and their refusal to provide their children with safe and nurturing shelter clearly falls within the concept of statutory neglect. (*In re Walter B.* (1992), 227 Ill. App. 3d 746, 756, 592 N.E.2d 274, 281.) The State must prove neglect by a preponderance of the evidence. The trial court's determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*B.T.*, 204 Ill. App. 3d at 280, 561 N.E.2d at 1272.) The finding of the trial court is against the manifest weight of the evidence if a review of the record clearly demonstrates that the proper result is the one opposite that reached by the trial court. *In re T.B.* (1991), 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896.

■ The trial court's finding of abuse and neglect was not against the manifest weight of the evidence. McDuffie's own children were removed from his custody because they were at risk of being abused by him. He was found to have abused one of his sons. He also had a bad temper, became frustrated, and lost his temper. Despite knowledge of these matters, Janie denied McDuffie was a risk to her children and allowed him to reside with her and her children. McDuffie created a substantial risk of harm to K.K. and M.K., and his presence in their home created an environment injurious to their welfare. Janie points out there was no evidence that K.K. or M.K. had actually been harmed. Section 2—3 of the Act, quoted above, makes clear that an injurious *environment* or substantial *risk* of harm is sufficient for a finding of neglect and abuse. (705 ILCS 405/2—3(1)(b), (2)(ii) (West Supp. 1993).) Where an injurious environment has been found to exist, the trial court need not wait until the child becomes a victim or is permanently emotionally damaged to remove the child from the household. (*S.D.*, 220 Ill. App. 3d at 504, 581 N.E.2d at 162.) DCFS may have given Janie confusing messages regarding the danger McDuffie posed to K.K. and M.K., but that does not diminish her parental responsibility to provide her children a safe environment and protect them from harm. Janie is primarily responsible for the welfare of her children, and DCFS becomes responsible for their welfare only after she has neglected her responsibility.

Second, Janie argues the trial court's finding that awarding custody to Dennis was in the best interest of the children was against the manifest weight of the evidence and an abuse of discretion. We first note the trial court believed there was no legal basis to terminate a fit parent's guardianship and custody and place it with a third party such as DCFS or Janie. Dispositional orders are authorized by section 2—23 of the Act (705 ILCS 405/2—23 (West Supp. 1993)), which states in part:

"Kinds of dispositional orders.

(1) The following kinds of orders of disposition may be made in respect of wards of the court:

(a) A minor under 18 years of age found to be neglected or abused under Section 2—3 may be (1) continued in the custody of his or her parents, guardian or legal custodian; (2) placed in accordance with Section 2—27; or (3) ordered partially or completely emancipated ***."

Section 2—27 of the Act (705 ILCS 405/2—27 (West Supp. 1993)) states in part:

"Placement; legal custody or guardianship.

(1) If the court finds that the parents, guardian or legal

custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that it is in the best interest of the minor to take him from the custody of his parents, guardian or custodian, the court may at this hearing and at any later point:

(a) place him in the custody of a suitable relative or other person as legal custodian or guardian;

(b) place him under the guardianship of a probation officer;

(c) commit him to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services; [or]

(d) commit him to the Department of Children and Family Services for care and service."

The implication is that both parents must be adjudged unfit or unable to care for the children before placement with DCFS is authorized. Generally, singular words include the plural and plural words include the singular (5 ILCS 70/1.03 (West 1992)), unless such a construction would be inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute. 5 ILCS 70/1 (West 1992).

Section 1—2 of the Act (705 ILCS 405/1—2 (West 1992)) declares the Act's purpose and policy in part as follows:

"Purpose and policy. (1) The purpose of this Act is to secure for each minor subject hereto such care and guidance, preferably in his or her own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his or her own family, to secure for him or her custody, care and discipline as nearly as possible equivalent to that which should be given by his or her parents, and in cases where it should and can properly be done to place the minor in a family home so that he or she may become a member of the family by legal adoption or otherwise.
***

(3) In all procedures under this Act, the following shall apply:

* * *

(c) The parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child.

(4) This Act shall be liberally construed to carry out the foregoing purpose and policy."

Although the Act states the best interests of the child prevail over the parents' right to custody of the child, the Act seems to treat both parents as a unit. It does not address the situation where only one separated parent has abused or neglected the child. Certainly, if the parent has abused or neglected his or her child, that parent's right to custody of the child should not prevail over the child's best interest. But we cannot say the Act authorizes the removal of custody from a fit parent based solely on the best-interest-of-the-child standard. Such a holding would place a parent on equal footing with third parties and eliminate a parent's superior right to custody of his or her children.

Nor would it be wise to grant a fit parent an absolute right to his or her child. Since this fact situation is analogous to the death of one custodial parent, it is appropriate to follow the approach taken by the Supreme Court of Illinois when custody of a child is contested between a surviving parent and a third party. In *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 514, 427 N.E.2d 1231, 1237, the supreme court noted:

"[T]he interest of a parent in the care, custody and control of his or her child is fundamental and not to be ignored or facilely swept away in the face of a competing petition for custody filed by a third party."

The court stated that a parent has a superior right to the custody of his or her child under the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 1—1 *et seq.*), and the court noted several cases requiring a "compelling reason," a showing of the surviving parent's "unfitness," "good reason," "convincing grounds," or "cogent reasons" to award custody of a child to someone other than the surviving parent. (*Townsend*, 86 Ill. 2d at 510, 427 N.E.2d at 1235.) The court then held that a nonparent must show good cause or reason to supersede the superior right of a parent to the custody of his or her child. (*Townsend*, 86 Ill. 2d at 515, 427 N.E.2d at 1237.) (For a discussion of legal history regarding a parent versus a third party in custody disputes, see Gitlin, *Defining the Best Interest of Children: Parents v. Others in Custody Proceedings*, 79 Ill. B.J. 566 (1991).)

■ The holding of *Townsend* has been applied in an action arising under the Act. (See *Miske v. Department of Children & Family Services* (1982), 110 Ill. App. 3d 278, 442 N.E.2d 273.) In that case, appellant Miske and the child's mother were divorced. DCFS filed an action against the mother for physically abusing the child, and Miske petitioned for custody of the child. The trial court awarded custody to

DCFS, considering Miske a "custodial alternative." The court noted a parent will be awarded custody of the child absent a showing of unfitness, compelling reason, good reason, or other such showing. The court reversed and remanded the case for further proceedings, holding that the trial court should have determined whether Miske's superior right to custody was overcome by evidence that the best interests of the child required placement with a third party. (*Miske*, 110 Ill. App. 3d at 281-82, 442 N.E.2d at 275.) Likewise, we hold that a fit parent has a superior right to custody of his or her child under the Act and that right can be superseded only by a showing of good cause or reason to place custody of the child in a third party.

This holding may seem like a restatement of the best-interest-of-the-child standard, but it is not the same standard. A good cause or reason not to place a child in a parent's custody will always satisfy the "best interest" test, but the reverse is not always true. For example, the supreme court noted in *Townsend*:

> "It is obvious that in a custody dispute a court should give weight to the claim of a third person who has had actual or legal custody of the child for a substantial period of time, especially if the evidence shows that the child has become an integral member of a true family unit. [Citations.] But however important this factor may be in a given case, it does not rise to the level of a presumption so as to 'neutralize' the superior-right doctrine or transpose the superior right from the natural parent to the third person. It remains simply a factor to consider in ascertaining what will best serve the interests of the child." (*Townsend*, 86 Ill. 2d at 515, 427 N.E.2d at 1237-38.)

We also find support for our holding in the recent supreme court case *In re Petition of Doe* (1994), 159 Ill. 2d 347, 351, 638 N.E.2d 181, 182-83, in which the court stated:

> "These laws are designed to protect natural parents in their preemptive rights to their own children wholly apart from any consideration of the so-called best interests of the child. If it were otherwise, few parents would be secure in the custody of their own children. If best interests of the child were a sufficient qualification to determine child custody, anyone with superior income, intelligence, education, etc., might challenge and deprive the parents of their right to their own children."

Cases cited by Janie do not undermine our holding. In *In re Ashley K.* (1991), 212 Ill. App. 3d 849, 571 N.E.2d 905, the parents who had been adjudicated neglectful and abusive were seeking to regain custody of the children and were opposed by the children's foster parents. Similarly, the custody dispute in *In re J.K.F.* (1988), 174 Ill. App. 3d 732, 529 N.E.2d 92, was between the child's stepfather and

his abusive mother. Both *In re Powers* (1981), 94 Ill. App. 3d 646, 418 N.E.2d 1145, and *In re Joseph B.* (1993), 243 Ill. App. 3d 339, 612 N.E.2d 39, concerned whether the children involved had been properly adjudicated to be neglected or abused. None of the cases cited by Janie involved a custody dispute between a fit parent and a third party.

■ The next question is whether the trial court's placement of the custody in Dennis was against the manifest weight of evidence, in light of Dennis' superior right to the custody of K.K. and M.K. The trial court deemed Dennis able to adequately care for them, and the trial court thought it would be best for the children to have some permanency in their lives. The GAL wanted DCFS to retain custody of K.K. so that she could receive treatment for her emotional problems. K.K. had not received counseling while living with Dennis and his wife prior to the adjudicatory hearing. Dennis informed the court that he had not been aware of K.K.'s problem, but he assured the court that K.K. would receive the appropriate counseling. However, Dennis' assertion of ignorance regarding K.K.'s condition was in error, because he had been informed at the shelter-care hearing that K.K. had attempted suicide and needed treatment for her emotional problems. Apparently, the trial court was satisfied by Dennis' assurance that he would provide help for K.K. In addition, the trial court believed counseling provided by DCFS would probably fail, since K.K. considered DCFS to be 75% of the problem. We cannot say the trial court's decision was against the manifest weight of the evidence.

Last, Janie argues the trial court abused its discretion by closing the case before affording Janie the opportunity to make reasonable progress toward the return of her children and to make reasonable efforts to correct the conditions leading to the removal of the children. The State also discusses Janie's reasonable progress. The parties' discussion of, and citations regarding, Janie's reasonable progress are inapposite. A lack of reasonable progress is a ground for termination of parental rights (see 750 ILCS 50/1(D)(m) (West 1992)), but is not involved with termination of proceedings under the Act (see 705 ILCS 405/2—31 (West Supp. 1993)). The appropriate standard is the child's best interests, as stated by section 2—31(2) of the Act:

> "Whenever the court determines, and makes written factual findings, that the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged. The court may at

the same time continue or terminate any custodianship or guardianship theretofore ordered but the termination must be made in compliance with Section 2—28." 705 ILCS 405/2—31(2) (West Supp. 1993).

At the dispositional hearing, the trial court stated its role was ended since the children were in the custody of a responsible parent, albeit not the same parent having custody when the proceedings began. The trial court determined it would not be in the best interests of the children or the public to continue the proceedings, return in six months, and then determine the best interests of the children.

■ The trial court's decision that it was in the best interests of the children to terminate the proceedings was an abuse of discretion. The GAL pointed out to the trial court that K.K. had not received counseling for her emotional problems. Dennis had not obtained counseling for K.K., even though he had been made aware of the problem at the shelter-care hearing. However, at the dispositional hearing, Dennis informed the court that he was unaware of K.K.'s prior suicide attempt, and he assured the court that K.K. would receive counseling. Nevertheless, the trial court abused its discretion by terminating the proceedings, thereby ending its supervision over K.K. It was in K.K.'s best interest to receive counseling and resolve the issues leading to her suicide attempt. The trial court could not ensure that K.K. received counseling unless the proceedings were continued and the trial court exercised its review powers pursuant to section 2—28 of the Act (705 ILCS 405/2—28 (West Supp. 1993)). The trial court was understandably concerned that K.K. have stability in her life, but this was achieved by allowing Dennis to retain custody of K.K. The trial court's decision to terminate the proceedings is reversed and the cause remanded to the trial court to reopen the proceedings and use its review powers to ensure that K.K. receives appropriate treatment. We expressly note the remand is not for the purpose of giving Janie an opportunity to obtain the return of her children; of course, she may avail herself of any provisions within the Act.

Affirmed in part; reversed in part and remanded with directions.

GREEN and McCULLOUGH, JJ., concur.