NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190899-U

NO. 4-19-0899

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* T.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|     Petitioner-Appellee, | ) | No. 19JA164 |
|     v. | ) | |
| Mina R., | ) | Honorable |
| | ) | Karen S. Tharp, |
|     Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding the trial court did not err in placing the minor child in the guardianship and custody of the Illinois Department of Children and Family Services where the father previously displayed an inability to control the minor's dangerous behaviors.

¶ 2    Respondent, Mina R. (Mother), appeals the trial court's order making T.R. a ward of the court and placing her under the guardianship and custody of the Illinois Department of Children and Family Services (DCFS).

¶ 3    On appeal, Mother specifically challenges the trial court's dispositional order, arguing the court's decision stands against the manifest weight of the evidence because the only evidence supporting the court's order was a stipulation of no-fault dependency from T.R.'s father. We disagree and affirm the trial court's judgment.

¶ 4                              I. BACKGROUND

¶ 5    On August 19, 2019, the State filed a petition for adjudication of neglect with

respect to T.R.—a minor child born to Mother and Thomas R. (Father) on June 27, 2007—alleging T.R. was a neglected and dependent minor in accordance with sections 2-3(1)(a) and 2-4(1)(c) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a), 2-4(1)(c) (West 2018)). Following a shelter care hearing, pursuant to the stipulation of neglect and immediate and urgent necessity by Father, the trial court issued an order placing temporary custody and guardianship of T.R. with DCFS.

¶ 6        In October 2019, DCFS established a family service plan for T.R. and Father. DCFS noted Father had an open intact case since April 2019, but he had been unable to control T.R.'s dangerous and risk-taking behaviors. For example, despite receiving psychiatric services and intact services, T.R. continued to leave Father's house without permission and refused to follow his rules. DCFS noted T.R. tested positive for sexually transmitted diseases (STDs) when she was brought into care and completed antibiotics. The service plan indicated T.R. would soon begin attending ABC Counseling. DCFS initially placed T.R. in a traditional foster home but eventually moved her to a family placement. T.R. now lived with her sister and the home was appropriate. T.R. had weekly visitation with Father, but she refused visitation with Mother. DCFS's service plan noted T.R. had been removed from Mother's care in North Carolina.

¶ 7        On November 13, 2019, the trial court held an adjudicatory hearing wherein Father and the State reached an agreement for a no-fault dependency stipulation. Father agreed to admit T.R. qualified as a dependent minor in accordance with section 2-4(1)(c) of the Juvenile Court Act in that T.R. is without proper care necessary for her wellbeing through no fault, neglect, or lack of concern by Father. In exchange for this admission, the State agreed to drop the two allegations of neglect. The State then provided the following factual basis for the no-fault dependency stipulation:

"[O]n August 15th, DCFS hotline received a report regarding a minor by the name of [T.R.] [T.R.] was found in a motel in Indiana. It was the third night in a row that she had left her father's residence without permission in the middle of the night. [Father] had moved his bed to the living room next to the front door in an attempt to keep her from absconding, as this was a pattern of behavior. He also attempted to get her into the partial hospitalization program. At one point, he took her to the emergency department at the hospital for evaluation, and there was also an intact case there which services were provided. None of those remedies seemed to work, and thus the hotline call was made."

Father admitted this allegation and the court accepted his admission. Mother, who was present at the hearing and represented by counsel, made no objection to the no-fault dependency stipulation, Father's admission, or the court's acceptance of his admission.

¶ 8 The trial court issued an order of adjudication finding T.R. a dependent minor based on the facts that T.R. "was exhibiting behaviors including running away out-of-state" and "Father attempted to get help for [T.R.] including P[artial] H[ospitalization] P[rogram] and intact services." The court's order placed T.R. in the custody and guardianship of DCFS, directed DCFS to prepare a dispositional report, and granted Mother permission to participate in the next hearing via telephone per her request.

¶ 9 In a Dispositional Hearing Report submitted for the court's consideration, DCFS recounted the circumstances leading to DCFS's involvement with T.R. and Father—specifically, T.R. repeatedly leaving home without permission. DCFS reported T.R. presented to St. John's Hospital with gonorrhea and chlamydia. T.R. self-reported she had sex with multiple adult partners, both male and female. DCFS's report noted T.R. was in the sixth grade and received

extra assistance in math and literature. DCFS noted T.R. lived with her sister in a relative placement. T.R.'s sister provided a safe home with proper structure, routine, and discipline for T.R. For example, T.R.'s sister ensured T.R. followed her schoolteacher's suggestion that T.R. read every night and complete additional math worksheets. DCFS's report noted T.R. had unsupervised visits with Father in his home. As for treatment and services, T.R. successfully completed Lincoln Prairie's partial hospitalization program and was currently receiving services from ABC Counseling due to her highly sexualized behaviors. T.R. also received Intensive Placement Stabilization services. DCFS noted T.R. and her father would begin family therapy when deemed appropriate. DCFS summed up its report by noting T.R. engaged in dangerous and risk-taking behaviors when she lived with Father and Father, despite his repeated efforts, could not control T.R.'s behavior or supervise her.

¶ 10    DCFS determined T.R. "needs to continue to stabilize in her foster home and work on her treatment plan at ABC Counseling." DCFS further opined, "[T.R.] needs to be able to demonstrate healthy relationships, appropriate boundaries, and the ability to follow all household rules; while obeying the law." As for Father, DCFS determined "he needs to demonstrate the ability that he is the authority in the home *** [and] needs to show he can provide the structure, routine, and discipline for [T.R.] to ensure she is always safe and successful."

¶ 11    At the dispositional hearing on December 11, 2019, the State recommended that custody and guardianship of T.R. remain with DCFS. Neither Father nor T.R.'s guardian *ad litem* (GAL) objected to the State's recommendation. Father, however, requested the court give DCFS the right to place T.R. with him in the future. Father did not indicate a desire for immediate placement. The GAL stated T.R. had no interest in being placed with Father. Mother

- 4 -

participated in the hearing via telephone, though her counsel was physically present in the courtroom. Mother opposed the State's recommendation. Specifically, she requested T.R. be placed with Father and not with DCFS. The court issued a dispositional order adjudging T.R. a ward of the court and placing her in the custody and guardianship of DCFS. Per Father's request, the court gave DCFS the right to place T.R. with Father in the future.

¶ 12          This appeal followed.

¶ 13                              II. ANALYSIS

¶ 14          Respondent mother argues the trial court's dispositional order erroneously placed T.R. in the custody and guardianship of DCFS. We disagree and affirm the trial court's judgment.

¶ 15          The Juvenile Court Act (705 ILCS 405/1 *et seq.* (West 2018)) governs petitions for adjudication of wardship and outlines a "two-step process a trial court must employ in deciding whether a minor should be made a ward of the court." *In re Jay H.*, 395 Ill. App. 3d 1063, 1068, 918 N.E.2d 284, 288 (2009). Step one requires the court to hold an adjudicatory hearing where " 'the court shall first consider only the question [of] whether the minor is abused, neglected[,] or dependent.' " *Jay H.*, 395 Ill. App. 3d at 1068 (quoting 705 ILCS 405/2-18(1) (West 2008)). If the trial court answers the first question in the affirmative, *i.e.*, the minor is an abused, neglected, or dependent child, the court must move to step two—the dispositional hearing. *In re A.P.*, 2012 IL 113875, ¶ 21, 981 N.E.2d 336 (citing 705 ILCS 405/2-21(2) (West 2010)). "At the dispositional hearing, the trial court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court," *A.P.*, 2012 IL 113875, ¶ 21, and then if the minor "is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety, and interests of the

minor and the public." 705 ILCS 405/2-22(1) (West 2018). The Juvenile Court Act provides the trial court with several options for proper disposition, including giving custody and guardianship of the minor to DCFS. 705 ILCS 405/2-23, 2-27(1)(d) (West 2018). On review, we will reverse a trial court's order if the findings stand against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order. *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896 (1991). "The finding of the trial court is against the manifest weight of the evidence if a review of the record clearly demonstrates that the proper result is the one opposite that reached by the trial court." *In re M.K.*, 271 Ill. App. 3d 820, 826, 649 N.E.2d 74, 79 (1995).

¶ 16        Here, Mother challenges the trial court's dispositional order as against the manifest weight of the evidence. Mother specifically contends Father's stipulation of no-fault dependency provided insufficient evidence for the court's decision to make T.R. a ward of the court and place her under the guardianship and custody of DCFS rather than place her with Father. We disagree.

¶ 17        Contrary to Mother's assertion, there was ample evidence to support the trial court's dispositional order, particularly its decision to keep guardianship and custody of T.R. with DCFS rather than place her with Father. The factual basis for the no-fault dependency stipulation in the adjudication hearing established that T.R. left Father's home without permission on three consecutive nights and was eventually found in an Indiana motel. Despite Father's efforts to supervise T.R.—he moved his bed to the living room by the front door—T.R. still got out of the house. The factual basis further established that Father tried to get T.R. help through a partial hospitalization program or through an emergency room admission. Father also sought help from DCFS through intact services, but nothing worked to control T.R.'s behavior.

These uncontested facts alone—presented at the adjudicatory hearing with no objection from Mother—support the trial court's dispositional order. See *In re R.B.*, 336 Ill. App. 3d 606, 618, 784 N.E.2d 400, 409 (2003) (stating a custodial parent's " 'stipulation alone is sufficient to support the finding of neglect by the court and its adjudication of wardship' ") (quoting *In re Johnson*, 102 Ill. App. 3d 1005, 1014, 429 N.E.2d 1364, 1372 (1981)).

¶ 18            Besides the factual basis for Father's no-fault dependency admission, there was other evidence supporting the court's decision. DCFS's dispositional report recounted the dangerous behaviors T.R. exhibited when living with Father. She ran away from home, tested positive for multiple STDs, and admitted to having sex with multiple adults. The dispositional report likewise outlined Father's failed attempts at supervising or controlling T.R.'s behavior. He sought help for his daughter and tried to supervise her, but nothing worked. The dispositional report detailed how T.R. improved once she was placed in relative placement and began receiving services. For example, the report noted T.R.'s sister provided her a safe and appropriate home. Moreover, T.R.'s sister provided proper structure, routine, and discipline for T.R. Ultimately, the dispositional report recommended that T.R. be made a ward of the court and remain in DCFS's custody and guardianship.

¶ 19            Finally, at the dispositional hearing, Father did not object to the State's recommendation that T.R. be made a ward of the court and placed under the guardianship and custody of DCFS. Notably, he did not ask the court to immediately place T.R. with him, rather he asked the court to give DCFS the power to place T.R. with him sometime in the future. Like Father, the GAL made no objection to the State's recommendation. The GAL acknowledged that making T.R. a ward of the court and keeping her in DCFS's custody was in T.R.'s best interests. The GAL informed the court that T.R. "had no interest in being placed with her father."

¶ 20        Ironically, Mother is not arguing she was a proper placement or that the court abused its discretion by failing to place the child with her. In fact, after first appearing, Mother, who lives out of state, requested she be allowed to appear by telephone thereafter. Instead, she argues a position not even Father supported, *i.e.*, immediate placement with him instead of DCFS. The whole reason for the case opening was because Father was unsuccessful in his efforts to control T.R.'s behavior. He agreed T.R. should be placed under the care and custody of DCFS and knew she would continue her self-destructive and dangerous behavior if placed with him. T.R. made her feelings known in that regard as well. The fact Mother would prefer her daughter do so rather than continue to progress as she had in relative foster placement is troubling, to say the least.

¶ 21        Reviewing this record, we cannot conclude the trial court's dispositional order stands against the manifest weight of the evidence. Particularly, we cannot say the trial court should have reached the opposite result. See *M.K.*, 271 Ill. App. 3d at 826. Based on the evidence the trial court rightly made T.R. a ward of the court and kept her in DCFS's custody rather than returning her to Father's care.

¶ 22                          III. CONCLUSION

¶ 23        For the reasons stated, we affirm the trial court's judgment.

¶ 24        Affirmed.