No. 3--08--0332

Filed October 6, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| In re G.P., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| a Minor | ) | Will County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 04-JA–129 |
| | ) | |
| v. | ) | |
| | ) | |
| R.P., | ) | Honorable |
| | ) | Rodney B. Lechwar, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the opinion of the court:

Respondent R.P. is the father of the minor child G.P. The trial court found that D.M., the mother of the minor, neglected G.P. in 2004 by providing an injurious environment for the child. On June 17, 2005, at the dispositional hearing, the trial court placed the minor in the custody of father but kept the case open to address visitation with mother. After the dispositional hearing, father filed two separate motions, one in 2006 and one in 2007, asking the court to dismiss the juvenile case in order to allow the issues concerning the minor to be singularly addressed through family court or, in the alternative, to transfer and consolidate the juvenile case with the family court case. The trial court denied both petitions. Prior to father's

second motion to dismiss and transfer, mother filed a petition in juvenile court to restore custody of the minor to her. On June 12, 2007, the trial court granted mother's petition to restore mother's custody, over father's objection, and placed the minor with mother. Father appeals the trial court's 2007 decisions denying his motions to dismiss, his motion to transfer, and allowing mother's petition restoring custody of the minor to mother. We reverse and remand.

BACKGROUND

R.P. (father) and D.M. (mother) are the biological parents of G.P, a minor child who was born on September 3, 1994. On September 16, 2004, the State filed a petition alleging the minor G.P. was neglected due to an injurious environment. The State filed a concurrent petition on behalf of mother's other minor child, L.D., who did not share the same father with G.P. [1]

On October 7, 2004, the court entered a temporary shelter care order awarding temporary custody of both minors to the Department of Children and Family Services (DCFS) and placing G.P. with her paternal grandmother. L.D. remained in foster placement through DCFS. After DCFS contacted father, father entered his appearance in this matter on December 3, 2004. On December 13, 2004, DCFS submitted a letter to the court detailing its investigation of father for purposes of placement with father. The letter stated father owned his own three-bedroom home in Channahon, Illinois, and he had been employed at Exelon in Morris, Illinois, for the past 27 years. Father's income was approximately $65,000 per year and he voluntarily paid monthly child support for G.P. and had provided health insurance for her since birth. G.P. regularly visited father throughout her life and indicated she loved her father and his extended family.

---

[1]The case involving the other child is not part of this appeal, although some of the orders applicable to G.P. also contain references to the other concurrent case involving G.P.'s sibling who was placed under the guardianship of DCFS.

DCFS recommended placement with father.

 On December 14, 2004, the court continued the DCFS temporary custody order but authorized DCFS to place the minor G.P. with her father subject to visitation with G.P.'s mother. The court scheduled an adjudicatory hearing to take place on January 18, 2005.

Following the conclusion of evidence at the adjudicatory hearing, Judge Lechwar found that mother provided an injurious environment for both minors due to mother's heroin and cocaine usage and based on an indicated report of excessive punishment administered against the minor's sibling, L. D. G. P.'s father testified that there were no previous paternity determinations by court order. He explained that G. P.'s birth certificate identified him as her father. He lived with the minor and mother during the minor's first year. After their separation, he visited regularly with the minor every other week and voluntarily paid $500 each month for child support.

Following the adjudicatory hearing, father filed a "Petition for Placement of Custody of Minor Child With Father" requesting that it be heard in conjunction with the dispositional hearing. The judge scheduled the hearing on the "Petition for Placement of Custody of Minor Child With Father" and the dispositional hearing for the same date. The court also assigned a "Court Appointed Child Advocate" (CASA) worker to speak on behalf of both minors at future court hearings.

The court held the consolidated dispositional hearing and the hearing to determine placement of the minor but there is confusion in the record as to actual date of the hearing. The record shows that this hearing was held on June 13, 2005, but there is no transcript included in the record from that date. The transcript of the "Report of Proceedings" from June 17, 2005,

3

does not include the details of the evidence but includes the court's oral statement and findings as set forth below. The judge stated:

> "Based upon the matters and things which the Court heard, I will determine that custody and guardianship of [G. P.] be given to her father [R. P.].
>
> Let's see, D.C.F.S. has stated they want to maintain an open intact family case so as to monitor [G. P.'s] adjustment and her father for three months.
>
> I think that resolves the issues."

After mother orally requested the court to order visitation for her and other family members, the court stated:

> "I don't know if that belongs in family court or not. I don't know that that is something that I should be deciding.
>
> In any event, I certainly don't intend to decide it until after the sentencing [on mother's criminal drug charges].
>
> So if you want to reduce your request to writing, I will be happy to hear it at the appropriate time."

The court entered a "Dispositional Order for Placement (Non-Delinquency)" which was file-stamped June 17, 2005. This order placed the minor in the custody of her father. Preprinted language in the order stated:

> "The Court having considered the evidence and finding it has jurisdiction of the subject matter and the parties; the minor(s) is/are hereby

4

adjudged to be a ward of the Court and found to be neglected [which was handwritten onto a blank line] the Court further finds that all statutory prerequisites have been completed with; the parent, guardian or legal custodian is unfit, unable for some reason other than financial circumstances alone to care for, protect, train or discipline the minor(s), or is unwilling to do so; and it is in the best interests of the minor to take the minor from such custody."

On January 24, 2006, mother filed a "Petition for Unsupervised Flexible Visitation" in this case. Father filed a "Motion to Close Juvenile Proceedings" on January 26, 2006, alleging that mother had not exercised supervised visitation through Gentiva, an agency that provides supervised visitation services at hourly rates, as court ordered, since the court's July 17, 2005, order. He also alleged that mother had been in either in-patient treatment or living in a halfway house between the July order and January 24, 2006. Father also alleged that CASA and DCFS had closed their files regarding G. P.

In response to both petitions, CASA filed a letter in the court file on January 30, 2006, stating DCFS closed the case on July 19, 2005. That letter also stated that, since the last court date on July 19, 2005, mother had resided in a halfway house as part of a drug treatment program and the only visitation that occurred between mother and the minor was initiated by father in December and was supervised by mother's counselor. CASA recommended that the order for nonrelative supervised visitation continue until mother demonstrated that she could live independently, provide proof of regular attendance at Alcoholics Anonymous/Narcotics Anonymous meetings, and random "clean drug drops" for a period of six to nine months.

The court held a hearing on January 31, 2006, and entered a consolidated order, which appears to be a standardized permanency order for L. D., that included language regarding both children. There is a handwritten, but stricken, portion of the order that states, "As to [G. P.], 04 JA 129, custody and guardianship is returned to father. File closed as to [G. P.]." A second order was entered on the same day continuing the matter for "hearings on motions" to March 16, 2006.

On March 16, 2006, the court held a hearing on father's "Motion to Close the Juvenile Proceeding." The motion requested that the court "enter an order to terminate the juvenile proceedings and the wardship of the court." Father argued that the juvenile case should be closed because the court granted custody and guardianship to father on July 19, 2005, and the court ordered supervised visitation for mother but ordered no other services for this family. Father argued, since there was no other basis for the juvenile case to remain open, further visitation could be addressed through family court. Father attributed the delay to mother because she did not attempt to exercise supervised visitation from July through December of 2005. Father maintained that he initiated the supervised visits through mother's treatment agency, Stepping Stones, in December of 2005, and that agency could continue to supervise the visits. Mother alleged that father was thwarting visitation and that she had difficulty in getting transportation for the supervised visits. The State took no position on this motion.

The minor's attorney advised the court at this hearing that the minor wanted to have unsupervised visits with her mother but also wanted to have her juvenile case closed. CASA stated that it recognized the need for the minor to have a relationship with her mother, recommended supervised visits initially, and stressed that it was not allowed to supervise those

6

visits. The judge then said that he was going to keep the case open for this visitation issue.

The judge adopted father's suggestion and ordered supervised visits through mother's Stepping Stones treatment agency. The court authorized CASA to organize the visits and keep the court aware of the status and nature of the visits between mother and the minor. The judge stated that he would make a future determination whether the length or supervision of the visits would be adjusted based upon the information the court received from CASA. The court entered an order on this date that states, "This matter is continued to 5-18-06 [at] 9:00 a.m. *** File open for visitation looking towards relaxing supervision. Stepping Stones allowed to supervise."

On May 17, 2006, a CASA worker submitted a letter to the court explaining that DCFS closed its case regarding this minor on July 19, 2005, after the court placed the minor with her father. The letter recommended, "If [father] and [mother] cannot agree on reasonable visitation with reasonable notice or cannot design a mutually agreeable schedule of visitation with the best interests of their daughter paramount, CASA recommends that the case be brought before Family Court. CASA recommends that the case be closed in Juvenile Court."

On May 18, 2006, the court entered another order that stated that mother's motions for unsupervised visitation were set and the matter was continued to September 21, 2006. However, the order also stated that the motion for unsupervised visitation was taken under advisement. On September 18, 2006, mother filed a separate "Motion for Restoration of Custody of Minor Child." The order in the record entered on September 21, 2006, stated the court conducted a status on visitation and continued the case for "hearing on motion or presentation of agreement."

In a letter dated October 11, 2006, CASA reported that the parties prepared a visitation schedule for October, November, and December 2006, including holiday visitation. CASA

7

recommended that the parties agree on a visitation schedule for six months in advance, rather than three, and to include all holidays and special occasions for both sides of the families.

On October 12, 2006, the judge entered an order setting the case for "status on agreement", setting hearing date on mother's motion; and continuing all matters to January 9, 2007. Additionally, the court entered an order on the same date allowing unsupervised visitation for mother on alternate weekends, holidays, and certain special occasions. On March 23, 2007, father filed a "Petition to Transfer" and a "Motion to Dismiss," again requesting transfer of the custody and visitation issues to the family court in Will County case number 07-F-177. On March 29, 2007, mother's attorney objected to father's motions to transfer the case to family court and dismiss the juvenile case based on *res judicata* after the court denied father's similar motion to dismiss filed in January of 2006 in this juvenile case. Father responded that *res judicata* did not apply because a petition for custody in a new 2007 parentage action was now pending in family court that did not exist when his previous motion to dismiss was decided.

In support of the motion, counsel for father argued that since DCFS closed its case involving G. P. in July of 2005, no agency had recently evaluated the best interests of the minor or mother's progress. As a result, father reminded the juvenile court judge that the Illinois Marriage and Dissolution of Marriage Act would allow the court to appoint a section 604(b) or section 604.5 (750 ILCS 5/604(b), 604.5 (West 2006)) custody evaluator or other expert to provide the court with current information and to assist in the determination of the best interests of this child in the context of a parental custody determination. Father's attorney also informed the juvenile judge that, regardless of the outcome of the juvenile case, father intended to proceed on his custody petition in the family court case.

During this hearing, the assistant State's Attorney was present but stated:

> "Since there [are] no agencies involved and the custody and
> guardianship of the minor was awarded to the father by this court, the
> State takes no position. This is basically a custody fight between parents
> at this point and it's basically not our business anymore, other than our file
> is open."

The minor's attorney argued that they were ready to proceed, that afternoon, on mother's scheduled "Motion for Restoration of Custody" and the minor wanted to go forward on that motion. In the alternative, the minor's attorney orally requested that both cases should remain with the juvenile judge, Judge Lechwar, in the event he granted the request to consolidate the family court and the juvenile cases because he was familiar with the ongoing status of this family. Before ruling, the court said:

> "The State doesn't care. The [m]inor wants it here. The mother
> wants it here. The father wants it there. *** What does the law say?"

Father argued that the juvenile statutes stated that the court can keep a case open and review it every 18 months after a custodial guardian has been appointed, but he cautioned that this might be limited to cases where DCFS was appointed as guardian.

The assistant State's Attorney observed that since both petitions involved the custody of the same minor, the juvenile court judge could consider both petitions. The assistant State's Attorney further stated:

> "But since the child was made a ward of the court and placed in the
> custody and guardianship of the father, I believe that there would have to

9

be like any other change of custody, a change of circumstances, a significant change of circumstances to overcome that order to begin with. And since that order was made by your honor placing the minor's custody and guardianship of the father, *** I'm a little confused as to why there's a petition for custody in family court when he has custody because I don't know why he needs custody when he already has custody."

The court commented, "I don't, either."

Therefore, the assistant State's Attorney and guardian *ad litem* believed that the juvenile court should hear the case.

The court then ruled:

"Well, it seems to me this is sort of an in around play. The matter is already pending before a court and somebody decides to go ahead and file before another court trying to - - I don't know what - - appeal my order? That doesn't make much sense to me, especially when the father has already been ordered to have custody and now he is going to family court to seek a custody order there. That's duplicating efforts and that's a waste of the Court's time. Your motion is denied."

Father's attorney then asked for a 45-day continuance of the hearing on mother's motion for restoration of custody stating that she assumed the court would have the minor finish the school semester at her father's house, even if the court restored custody to mother, so it would not cause prejudice to anyone. The court responded:

"The court is not in any way, shape or form governed by what school

10

districts do.  If I order custody, custody is where it is, never mind what school the kid has to go to."

The juvenile court judge conducted the hearing on mother's petition for restoration of custody on April 12, 2007.  The parties presented closing arguments to the court on May 29, 2007.  The court reserved ruling and rescheduled the case for June 12, 2007.  During its ruling on mother's petition for restoration of custody, the court stated:

> "Based upon the evidence that the Court has heard, the arguments, the case law and the applicable statutory law dealing with the matter before the court, the motion for restoration of custody is allowed.  But I want there to be arranged by you folks by agreement if you can, or by me, if necessary, reasonable visitation for father."

The court entered a written order on June 12, 2007, that contains the following language:

> "After hearing evidence and arguments of counsel and review of applicable statutory case law, Mother's Motion for Restoration of Custody is allowed.  Parties to prepare agreed visitation schedule for visitation of child by father.  Father's Motion for re-entry of DCFS into case for monitoring purposes allowed."

On June 28, 2007, mother filed a "Motion to Reconsider" the portion of the ruling ordering DCFS to renew their involvement with the family.  On July 12, 2007, father retained a new attorney and filed a motion to reconsider the decision restoring custody of the minor to her mother.  On July 16, 2007, the court granted mother's motion to reconsider and vacated the order requiring DCFS to become involved in the case.  On August 7, 2007, the parties reached a

11

visitation agreement with father reserving his right to appeal the court's decision to change custody.

After several continuances, father filed an amended motion to reconsider on February 7, 2008. In this motion, father first argued that the court did not formally find mother was now "fit" to have custody restored to her pursuant to the requirements of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (2006)). Father asked the court to vacate the order restoring custody of the minor for that reason and request the court to reconsider its decision denying the motion to consolidate the family law case with the juvenile case. Father stressed that Supreme Court Rule 903 (210 Ill. 2d R. 903) urged that all custody cases should be consolidated and heard by a single judge "whenever possible and appropriate." Father argued that without consolidation, the court should have considered the "bests interests" standards described in the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2006)), and the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2006)) when deciding restoration of placement with mother under the Juvenile Court Act since both custody petitions were pending.

The court denied father's motion to reconsider on April 10, 2008, and father appeals the court's ruling.

ANALYSIS

A. Wardship of the Minor

Although many issues were raised and addressed by the parties on appeal, we begin by considering father's argument that the juvenile court lacked subject matter jurisdiction because G.P. was not made a ward of the court. Counsel for father suggests that, in spite of the language of the written order declaring wardship, the juvenile court judge did not intend to make G.P. a

12

ward of the court. In support of this argument, father points out that the trial judge did not verbally state a best interest finding on the record and did not declare his intention to adjudge G.P. a ward of the court during the dispositional hearing.

After comparing the transcript of the court's oral statements following the dispositional hearing to the written order signed by the judge, we observe that the written order contains pre-printed "best interest" findings that the judge did not articulate on the record in open court. While the court's oral declaration was silent on the matter of wardship, neither party challenged the language of the written order within 30 days of its entry or contemporaneously claimed the written order signed by the judge inaccurately reflected the court's ruling.[2] Since the language included in the written dispositional order, declaring the minor to be a ward of the court, was not challenged within 30 days of that order, the accuracy of the contents of that order must be accepted as true for purposes of this appeal.

Additionally, father's first "Motion to Close Juvenile Court Proceedings," filed on January 26, 2006, requested the court to enter an order to terminate the juvenile proceedings *and the wardship of the court.* Furthermore, father's "Notice of Appeal" does not challenge the accuracy of the language of the dispositional order or contest the written finding that the minor was adjudged a ward of the court. For these reasons, we find that father has forfeited the issue regarding the accuracy of the dispositional order declaring G.P. a ward of the court.

B. Restoration of Custody to Mother

---

[2]Thus, the facts in this case are distinguishable from those in our recent decision, *In re C.L.*, No. 3-08-0254 & 3-08-0255 (September 8, 2008), where the court closed the juvenile case at the end of the juvenile dispositional hearing and the mother appealed that decision within 30 days of the entry of that dispositional order.

13

The courts have held that a parent has a superior right to the custody of his or her child under the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-1 *et seq.* (West 2006)). *In Interest of M.K.*, 271 Ill. App. 3d 820, 829 (1995), citing *In re Custody of Townsend,* 86 Ill. 2d 502, 510 (1981). In defining the parental right to custody, the Probate Act states:

> "If both parents of a minor are living and are competent to transact their own business and *are fit persons*, they are entitled to the custody of the person of the minor and the direction of his education. *** The parents have equal powers, rights and duties concerning the minor. If the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person."

> (Emphasis added.) 755 ILCS 5/11-7 (West 2006).

Recognizing that parental rights are ordinarily superior to the State's interest, the Juvenile Court Act of 1987 requires that the court make a fitness determination of both "*parents"* as a prerequisite to removing the child from parental control and placing the child with someone other than a parent. 705 ILCS 405/2-27(1) (West 2006); *In re M.K.*, 271 Ill. App. 3d at 828. The Juvenile Court Act authorizes the court to, "place the minor in the custody of a suitable relative or other person as legal custodian *only* when both parents are determined to be unfit, unable, or unwilling to act in a parental capacity. 705 ILCS 405/2-27(1)(a) (West 2006). In the instant case, after finding G.P. was neglected while in the care of her mother, the court relied on a pretrial home study conducted by DCFS and authorized DCFS to place the minor with her father on December 14, 2004. The father's fitness had not been questioned when the trial court pronounced the dispositional decision on June 17, 2005.

14

Next we consider whether the circuit court complied with the mandates of the Juvenile Court Act before returning G.P. to her mother. The Juvenile Court Act mandates that after the court finds a child to be neglected by a parent, the court *shall not* return the child to the custody of that parent until the court enters an order finding the parent to be fit to care for the child. 705 ILCS 405/2-23(1)(a) (West 2006); *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008).

The dispositional order allows the juvenile court to decide what further actions are necessary to provide a neglectful parent with "fair notice of what they must do to retain their rights to their child" or face future termination of parental rights proceedings. *In re April C.*, 326 Ill. App. 3d 225, 237 (2001). By making the minor a ward of the court, mother faced the possibility of the termination of her parental rights. However, the court did not enter a dispositional order setting permanency goals or service plans to insure that mother corrected the conditions that resulted in the removal of G.P. from her custody. Presumably, the court did not do so because G.P. was living with a fit parent, her father.

In this case, the juvenile court restored residential custody to mother on June 17, 2007, without any home study or investigation by DCFS or other agency. In fact, when mother filed her request to restore custody under section 28 of the Juvenile Court Act on September 18, 2006, the court was still requiring all visits between G.P. and mother to be supervised, consistent with the recommendations of CASA. Therefore, the mother's self-reported abstinence from heroin and cocaine use could not be measured or tested by the juvenile court in any meaningful fashion. The absence of current social service reports prepared by court ordered service providers monitoring mother's progress in treatment created a stark record for the court to evaluate mother's fitness to parent. The trial court simply avoided making a factual determination or finding that mother was

15

now fit as required by section 28 of the Juvenile Court Act (705 ILCS 405/28 (West 2006)) before granting mother's petition for restoration of custody in the Juvenile Court context.

Fortunately, G.P. has two parents who have been involved in her life since birth and desire to be named as her primary custodial caretaker. One parent has never been accused of neglect or found to be unfit. The other parent has struggled with addiction but has attempted to correct the conditions that forced the juvenile court to remove G.P. from her care with very little structure from the juvenile court orders. By all accounts, G.P. is a bright child willing to abide by the court's decision.

We are mindful that this matter involves the minor, a young woman in the second decade of her life, who has stated a slight preference to the juvenile court judge of her desire to return to her mother's residence. However, mother's parental rights were restricted by the juvenile court because the judge found her to be neglectful and dispositionally unfit. Even assuming, *arguendo*, that the juvenile court judge had the statutory authority under the Juvenile Court Act to restore this mother's parental rights to residential placement, the juvenile court could not properly do so until the court found that mother had complied with the court's service plans and achieved parental fitness. Therefore, absent a finding that mother was fit, we conclude that the court's decision to restore custody of the minor to mother was contrary to statute and must be vacated.

C. Consolidation of Juvenile and Family Custody Petitions

Finally, we address whether the trial judge abused his discretion by refusing to consolidate the family court and juvenile court proceedings, both initiated in Will County, Illinois, pursuant to Supreme Court Rule 903 (210 Ill. 2d R. 903).

There is a subtle but very real distinction between placement for purposes of the

protective powers of the juvenile court and a custody determination between two parents who are unable to agree on the best interest of their child. The former power of the juvenile court is invoked by the State during an unforseen crisis. The latter power of the family court is invoked by a parent, such as this father, who voluntarily turns to the family court to resolve disputed custody matters between two parents with a child in common.

Thus, our supreme court has mandated that the circuit courts develop a standard practice to facilitate the consolidation of all pending cases involving the same children who may be affected by separate court proceedings, when feasible. The rule protects children who might bounce from household to household based on inconsistent, but legally correct, rulings founded on separate legislative enactments construed by different judges presiding in separate courtrooms. Supreme Court Rule 903 states:

> "Whenever possible and appropriate, all child custody proceedings relating to an individual child shall be conducted by a single judge. Each judicial circuit shall adopt a rule or order providing for assignment and coordination of child custody proceedings. Assignments in child custody proceedings shall be in accordance with the circuit rule or order then in force." 210 Ill. 2d R. 903.

Will County has not adopted a procedure to facilitate the consolidation of these matters involving children as required by Rule 903. Mother asserts the absence of a formal circuit court procedure, negates the supreme court rule's requirement that the trial court should consolidate the two Will County proceedings, if feasible. We disagree. The directive of our supreme court should not be so easily avoided.

17

Father, who properly petitioned the family court to decide the custody matter by applying the requirements of the Parentage Act, lost custody of his daughter in juvenile court in the absence of any allegations of abuse, or neglect, on his part. Based on separate and distinct best interests requirements to be balanced by a judge in family court under the Parentage Act, the family court judge may later elect to designate father as primary custodial parent and return the child to her father. This interrelationship between separate legislative enactments affecting parental rights provides a compelling need for Supreme Court Rule 903.

In the instant case, the propriety of the order denying consolidation of the custody cases rests on the construction of Rule 903. Construing a supreme court rule involves a question of law that we review *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998). When interpreting a supreme court rule, we apply the same principles of construction that apply to a statute and the goal is to ascertain and give effect to the intention of the drafters of the rule. *Rennick*, 181 Ill. 2d at 404-05. Our supreme court has previously held:

> "The rules of court we have promulgated are not aspirational. They are not
>
> suggestions. They have the force of law, and the presumption must be that
>
> they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d
>
> 204, 210 (1995).

Supreme Court Rule 903 sets forth separate directives which are not dependent on each other. First, the rule states, "Whenever possible and appropriate," all child custody proceedings involving the same child "shall" be considered by the same judge. 210 Ill. 2d R. 903. The rule goes on to state a separate and independent requirement that each circuit "shall adopt" a procedure to coordinate child custody proceedings. However, the mandate that all child custody proceedings

18

*shall* be heard by a single judge is not conditioned upon the existence of a standardized circuit-wide procedure. The rule is conditioned only upon whether consolidation is both feasible and appropriate.

We conclude the trial judge was required to comply with Supreme Court Rule 903, even if Will County had not yet developed a local court rule providing for the assignment and coordination of these types of cases if consolidation in this case was appropriate and feasible. Therefore, we must consider whether the trial judge abused his discretion by failing to find that consolidation was appropriate in this case.

The judge viewed father's petition to consolidate with suspicion by stating:

> "It seems to me this is sort of an in around play. The matter is already pending before a court and somebody decides to go ahead and file before another court trying to - - I don't know what - - appeal my order? That doesn't make much sense to me, especially when the father has already been ordered to have custody and now he is going to family court to seek a custody order there. That's duplicating efforts and that's a waste of the court's time. Your motion is denied."

In this case, the parties suggested that the juvenile court judge should consider both petitions himself, in order to avoid the court's concerns about forum shopping. This cooperative suggestion made the consolidation potentially feasible. However, the trial judge denied the request for consolidation without stating any administrative or practical consideration making consolidation less than feasible. The court's ruling defies the plain language and purpose of Supreme Court Rule 903, which envisions that one judge should, when appropriate, order

19

consolidation.

As to appropriateness, the judge failed to consider that a prior judgment of parentage explicitly awarding either parent custody of G.P did not exist. Without the State's intervention due to mother's neglect, the family court would have been called upon to apply the Parentage Act to resolve the custody dispute in this case, because the biological parents of G.P. were not married.

For the first decade of G.P.'s life, neither parent petitioned the family court to apply the Parentage Act in order to assist them in custodial matters. Instead, both parents voluntarily agreed that mother would have residential custody of the minor and father would regularly exercise visitation every other week and pay monthly child support. Father honored this agreement, paying child support and regularly exercising visitation. Due to the State's intervention when the juvenile case arose, mother could no longer honor her agreement to act as physical custodian due to her own heroin and cocaine abuse and the physical abuse occurring against G.P.'s sibling. The State stepped in, and the court removed the children from mother's care.

Creating the first judgment defining the custodial rights of unmarried parents is not within the legislative powers of the juvenile court. Yet, this is what the juvenile court judge intended to do as evidenced by this exchange between the assistant State's Attorney and the court:

> "COUNSEL: ***since that order was made by your honor placing the minor's custody and guardianship of the father, *** I'm a little confused as to why there's a petition for custody in family court when he has custody because I don't know why he needs custody when he already has custody.

THE COURT: I don't, either."

Father's petition in family court was necessary because, in the absence of a marriage and subsequent dissolution, our legislators have delegated that duty of creating a judgment explicitly defining the parental rights for unwed parents to family court under the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2006)) and the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* West 2006)).

Father filed the first and only custody petition in family court on March 23, 2007, pursuant to the Illinois Parentage Act, more than two years after the juvenile court proceedings began on September 16, 2004. At this time, mother's petition for restoration of custody, filed much earlier in the juvenile court on September 18, 2006, was still unresolved. As of September 18, 2006, G.P. had been residing with her father for nearly 15 months, since July 19, 2005. Father requested consolidation of both the juvenile court action and the family court proceeding pursuant to Supreme Court Rule 903 (210 Ill. 2d R. 903).

In spite of the court's suspicions that father was forum shopping, father did not file a custody petition under the Parentage Act to invoke the power of family court at the time of the dispositional hearing, when mother was unquestionably unfit. Only after mother filed her petition for restoration of custody under the less stringent Juvenile Court Act did father file an action in family court under the Parentage Act.

As pointed out to the trial court by father's attorney, the factors to be considered under the Marriage Act to determine the "best interest of the child" do not contain the same considerations as those outlined in the Juvenile Court Act. 750 ILCS 5/602 (West 2006). Additionally, counsel emphasized that the Marriage Act provided more investigative tools for the

21

parents by allowing either parent to request that a custody evaluator or other expert be appointed when custody is in dispute between two parents.  750 ILCS 5/604(b), 604.5 (West 2006).  This additional tool was not available to the juvenile court judge. We agree that these considerations made consolidation appropriate.

The trial court did not consider the intertwined issues that resulted from the court order placing the minor with father on July 19, 2005. Section 14(a)(1) of the Parentage Act mandates that the court, in determining custody,  joint custody, removal, or visitation, shall apply the relevant standards of the Marriage Act.  750 ILCS 45/14(a)(1) (West 2006).   Section 14(a)(2) states:

> "If a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting custody to the other parent.  If the parentage judgment contains no such provisions, custody shall be presumed to be with the mother; however, the presumption shall not apply if the father has had physical custody for at least 6 months prior to the date that the mother seeks to enforce custodial rights."   750 ILCS 45/14(a)(2) (West 2006).

G.P. had been residing with her father for more than SIX months, creating a potentially strong argument that father should be viewed as the primary custodial parent in family court. 750 ILCS 45/14(a)(2) (West 2006).

Arguably, *mother* was able to circumvent the best interest scrutiny of the family court by requesting the restoration of custody in juvenile court and avoiding family court by resisting the motion to consolidate   In light of the circumstances of this case, we conclude that the trial judge

abused his discretion by denying the request for transfer to or consolidation with the family court case without making findings as to why it would be administratively unfeasible or inappropriate to do so based on statutory considerations. Moreover, the reasons stated by the judge in this case regarding the duplication of efforts are insufficient reasons to deny consolidation based on this record.

Accordingly, we reverse the court's order denying consolidation, vacate the order restoring minor's placement with mother based on the absence of a finding that mother had become fit for purposes of the Juvenile Court Act, and further direct the court to grant the petition to consolidate both juvenile and family court proceedings before one judge pursuant to Supreme Court Rule 903. We remand the matter for the consolidated hearing of both mother's petition to restore her custody rights under the Juvenile Court Act and father's petition for permanent custody under the Parentage Act. Finally, we express *no* opinion regarding the proper disposition of the pending petitions once the court has considered all relevant facts and statutory standards necessary to a proper determination of both pending petitions.

## CONCLUSION

Reversed and remanded with directions.

LYTTON and SCHMIDT, JJ., concur.

23