2015 IL App (3d) 130856

Opinion filed January 23, 2015
Modified upon denial of rehearing September 2, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

_____

| | | |
|---|---|---|
| *In re* M.M., a Minor | ) | Appeal from the Circuit Court |
| (The People of the State | ) | of the 10th Judicial Circuit, |
| of Illinois, | ) | Peoria County, Illinois |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
|     v. | ) | Appeal No. 3-13-0856 |
| | ) | Circuit No. 13-JA-208 |
| | ) | |
| Heather M., | ) | Honorable |
| | ) | Mark E. Gilles, |
|     Respondent-Appellant). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| *In re* M.M. and J.M., Minors | ) | Appeal from the Circuit Court |
| (The People of the State | ) | of the 10th Judicial Circuit, |
| of Illinois, | ) | Peoria County, Illinois |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
|     v. | ) | Appeal No. 3-13-0857 |
| | ) | Circuit No. 13-JA-209 |
| | ) | |
| Heather M., | ) | Honorable |
| | ) | Mark E. Gilles, |
|     Respondent-Appellant). | ) | Judge, Presiding. |

_____

    JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Lytton and Carter concurred in the judgment and opinion.

_____

**OPINION**

¶ 1     The respondent, Heather M., appeals from a judgment of the circuit court of Peoria County finding that her minor children, M.M. and J.M., should be placed outside of the respondent's home and appointing the Illinois Department of Children and Family Services (DCFS) as the temporary guardian of her children even though the court found the respondent to be a fit parent.  For the following reasons, we reverse.

¶ 2                                              FACTS

¶ 3      The State filed a juvenile petition alleging that M.M. and J.M. were neglected minors due to an environment that was injurious to their welfare.  The petition alleged that, while the minors' father was acting as a caretaker for his paramour's children, he struck one of his paramour's children (a six-year-old boy) repeatedly on the buttocks and slapped his face, leaving multiple bruises on the boy's buttocks and face.  The petition also alleged that the father had a criminal history which included a conviction of battery in 2003 and convictions of driving under the influence of alcohol in 2003 and 2008.  The petition asserted that the minors' mother's whereabouts were unknown.  The father entered into an agreed order of protection with DCFS which provided that the children would reside with their paternal grandparents and that the father's visits with the children would be supervised.  The respondent was not a signatory to the order of protection.

¶ 4     The father subsequently disclosed the respondent's name in open court, and legal counsel was appointed for the respondent in the juvenile matter.  The respondent filed an answer to the State's juvenile petition which admitted all of the allegations contained in the petition except for the allegation that her whereabouts were unknown.  (The State later amended its petition to delete that allegation.)  There was no shelter care hearing held with respect to either minor.

¶ 5     An adjudicatory hearing was held on October 15, 2013.  The hearing consisted essentially of a factual basis.  There was no evidence or information presented at the adjudicatory hearing

2

regarding the respondent. At the conclusion of the hearing, the trial court found that the minors were neglected due to an injurious environment. However, the court found that the respondent did not contribute to the minors' injurious environment. The court scheduled a dispositional hearing, ordered DCFS to prepare a social history, and ordered both parents to cooperate with DCFS in the preparation of the social history.

¶ 6    Lutheran Social Services of Illinois (LSSI) prepared a dispositional hearing report (Report), which it filed with the court on October 30, 2013. The Report stated, *inter alia*, that the respondent: (1) had stable housing in Peoria; (2) had obtained a certified nursing assistant certificate and a degree in phlebotomy from Illinois Central College; (3) had a prior relationship with the minors' father which ended in 2008; (4) had completed a parenting class and a domestic violence class as part of an intact family service program in 2011-12; (5) was not addicted to alcohol or illegal substances and had provided a clean urine drop during a random drug screen;[1] (6) had never been arrested; (7) had been diagnosed with bipolar disorder, anxiety disorder, and depression and was addressing these mental health issues with prescription medication; (8) had recently engaged in an intact family services program through LSSI and indicated a willingness to participate in services; and (9) was cooperating with the caseworker. The Report also noted that the respondent reported that the minors' father had problems with alcohol, drugs, and domestic violence during their relationship but there was never police involvement with respect to any incidents between the respondent and the minors' father. The caseworker opined that, if the respondent continued to cooperate and participate in services as requested, she will be able to provide a safe, loving, and nurturing environment in which to raise her children. The Report

_____

[1] As a result of the clean urine drop, it was not recommended that the respondent continue to provide urine drops.

recommended that the respondent continue to be found fit. It made no recommendation as to guardianship or placement of the children. The caseworker had no position as to who should be appointed guardian for the children. The only substantive service recommended for the respondent was a mental health assessment.

¶ 7    Both the State and the guardian *ad litem* argued that the respondent should be found fit. However, both maintained that placement of the children with someone other than the respondent was necessary. The State provided no basis for this conclusion. The guardian *ad litem* insinuated that the respondent had some disqualifying mental health issues. At the dispositional hearing, the respondent asked to be found fit and to remain the guardian of her children and objected to any finding that placement was necessary.

¶ 8    At the conclusion of the dispositional hearing, the court found the respondent fit. However, the court determined that it was in the minors' best interest to be made wards of the court and appointed DCFS as temporary guardian of the children. The court provided no reasons in support of these conclusions, either orally or in writing. It merely stated that it had determined that placement of the children with DCFS was necessary based on the parties' arguments and "all that was presented in the materials for [the court's] review" during the dispositional hearing.[2]

¶ 9    The trial court also entered an order requiring the respondent to perform various tasks "in order to correct the conditions that led to the adjudication and/or removal of the children." For example, the court required the respondent to cooperate fully and completely with DCFS, to "obtain and maintain stable housing conducive to the safe and healthy rearing" of the children, and to undergo a mental health assessment to determine whether counseling was needed. If the

_____

[2] The only materials before the trial court at the time of the hearing was the Report and a September 25-30, 2013 addendum to the Report.

4

mental health assessment determined that the respondent needed counseling, the respondent was ordered to undergo counseling. The respondent appeals.

¶ 10                                     ANALYSIS

¶ 11    We will reverse a trial court's dispositional determination only if the findings of fact are against the manifest weight of the evidence, or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order. *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008).

¶ 12    Once a trial court adjudicates a child to be neglected, the Juvenile Court Act of 1987 (the Act) requires the court to hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2012); see also *K.L.S.-P.*, 381 Ill. App. 3d at 195. Section 2-27 of the Act provides that the court may place the minor outside of his or her parental home

> "[i]f the court determines *and puts in writing* the factual basis supporting
> the determination of whether the parents, guardian, or legal custodian of a
> minor adjudged a ward of the court are *unfit or are unable, for some*
> *reason other than financial circumstances alone, to care for, protect, train*
> *or discipline the minor or are unwilling to do so*, and that the health,
> safety, and best interest of the minor will be jeopardized if the minor
> remains in the custody of his or her parents, guardian or custodian."
> (Emphases added.) 705 ILCS 405/2-27(1) (West 2012).

In that event, one of the options provided by the Act is for the court to commit the child to the care of DCFS. *Id.*

¶ 13    As the State admits, the trial court in this case did not articulate specific reasons for its decision and did not state that the respondent was unable or unwilling to care for the children. It merely found the respondent fit and provided no explanation for its finding that placement with

5

DCFS was necessary. A review of the dispositional order itself shows a designated area where the trial court is to record whether a parent "is fit" or "is unfit or unable for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor(s), or is unwilling to do so." This form-order contains additional space for the trial court to record the basis for any finding of unfitness or the basis for a finding that the parent is unable to care for the child. However, the trial court merely checked the box indicating that the respondent was fit. The court did not check the box indicating that the respondent was unable or unwilling to care for the children or provide any written basis to support such a finding.

¶ 14 Thus, the trial court failed to comply with the Act's mandatory prerequisites for placing the children with DCFS. As noted above, section 2-27(1) of the Act provides that the trial court may place a child outside the parental home only if the court: (1) makes a factual determination that the parent is either unfit, unable, or unwilling to care for the child; and (2) "puts *in writing* the factual basis supporting the determination." (Emphasis added.) 705 ILCS 405/2-27(1) (West 2012). In *In re Madison H.*, 347 Ill. App. 3d 1024, 1028 (2004), our appellate court ruled that section 2-27(1)'s writing requirement is not permissive and a "trial court's failure to provide the required written factual basis in its dispositional order was reversible error." In affirming our holding in that case, our supreme court ruled that an oral finding on the record, once transcribed, may satisfy the writing requirement of section 2-27(1) "provided that it is explicit and advises the parties of the basis for the court's decision." *In re Madison H.*, 215 Ill. 2d 364, 377 (2005); see also *id.* at 374-75. The trial court did not satisfy either of section 2-27(1)'s requirements in this case. It did not find that the respondent was unfit, unwilling, or unable to care for her children. Nor did it provide the basis for any such finding explicitly, either orally or in writing.

¶ 15 Accordingly, the court committed reversible error in awarding custody of the children to DCFS. As noted above, a trial court abuses its discretion by entering an inappropriate

6

dispositional order. *K.L.S.-P.*, 381 Ill. App. 3d at 195. Without a finding of unfitness or a properly supported finding that respondent was unable or unwilling to care for the children, the trial court was not authorized to make the children wards of the court and to grant custody and guardianship of the children to DCFS. *Id.* at 196; 705 ILCS 405/2-23(1)(a), 2-27(1) (West 2012); *In re G.P.*, 385 Ill. App. 3d 490, 500 (2008) ("The Juvenile Court Act authorizes the court to 'place the minor in the custody of a suitable relative or other person as legal custodian' *only* when both parents are determined to be unfit, unable, or unwilling to act in a parental capacity.") (Emphasis in original.) (quoting 705 ILCS 405/2-27(1)(a) (West 2006))); *In re Ta. A.*, 384 Ill. App. 3d 303, 307 (2008) (ruling that "[g]enerally, both parents must be adjudged unfit, unable, or unwilling before placement with DCFS is authorized because biological parents have a superior right to custody," and holding that the trial court abused its discretion by placing children with DCFS even though it found the biological father fit, did not find him unable or unwilling to care for the children, and did not articulate a reason why it granted custody and guardianship to DCFS); see also *In re S.S.*, 313 Ill. App. 3d 121, 132 (2000); *In re Arthur H.*, 338 Ill. App. 3d 1027, 1041 (2003), *rev'd on other grounds*, 212 Ill. 2d 441 (2004).  The statutory scheme and case law interpreting it dictate that a trial court cannot move on to a best interest determination until it finds the natural parents unfit, unwilling, or unable to care for their minor child. *In re M.R.*, 393 Ill. App. 3d 609, 616 (2009).

¶ 16     The State argues that "[e]ven though the trial court did not articulate specific reasons for his decision" or "specifically state that the respondent was 'unable' or 'unwilling' to care for the children," "the evidence [was] overwhelming that the respondent was unable to care for or protect the children and that the health, safety, and best interests of the children would be jeopardized if they were placed in the respondent's custody."  In support of this assertion, the State notes that: (1) the respondent suffers from mental illness, including bipolar disorder and

anxiety disorder, and there was no evidence of whether the respondent's mental illness is under control with medication or any evidence of her ability to function or parent the children; (2) the respondent has been involved in physically abusive relationships with men; (3) the respondent last worked in 2011 and currently lives with her mother, father, and her three-year-old daughter; (4) the respondent found it difficult to discipline her daughter because she is "too cute"; and (5) there was no evidence that the children ever lived with the respondent, and the respondent was not currently visiting the children on a regular basis. Nevertheless, in the absence of explicit findings by the trial court, we have no choice but the reverse the trial court's placement order. As noted above, section 2-27(1) requires *explicit findings* by the trial court that the respondent is unfit, unable, or willing to care for her children with the basis for these findings provided explicitly, either in writing or in a transcribed oral finding. We may not simply presume that the trial court made such findings (implicitly) based upon the strength of the evidence. *Ta. A.*, 384 Ill. App. 3d at 307-08 (vacating trial court's order granting DCFS guardianship with the right to place the children where the trial court did not make the requisite findings or articulate a reason in support of its decision, and "refus[ing] to speculate" as to the trial court's reasoning).[3] Accordingly, we remand this matter to the trial court so that the trial court may enter explicit,

---

[3] The State cites *In re Y.A.*, 383 Ill. App. 3d 311, 315 (2008), and *In re Terrell L.*, 368 Ill. App. 3d 1041, 1046 (2006), for the proposition that "the best interests of the child are superior to all other factors, even the interests of the biological parent." However, those cases are distinguishable. In *Y.A.*, the trial court made the necessary, specific findings of fact as to why the fit father was unable to care for the minor. Accordingly, placement with DCFS was proper. In *Terrell L.*, the rights of the minor's biological parents had previously been terminated and were not at issue.

specific findings consistent with the requirements of section 2-27(1). See *Madison H.*, 215 Ill. 2d at 378.

¶ 17    After we filed our opinion in this appeal, the State filed a petition for rehearing. Although the State's petition does not challenge our decision to remand the case for additional findings, it asks us to amend our opinion to reflect that a trial court may award custody to a third party such as DCFS if it finds such placement to be in the child's best interest, even if the trial court has not found that the child's biological parents are unfit, unwilling, or unable to care for the child.  We decline the State's request.

¶ 18    In support of its petition, the State cites *In re Star R.*, 2014 IL App (1st) 140920, ¶ 20, and *In re J.K.F.*, 174 Ill. App. 3d 732, 734 (1988), for the proposition that "[i]f the 'best interests' standard can be attained only by placing the child in the custody of someone other than the natural parent, it is unnecessary for the court to find the natural parent unfit to care for the child." However, these cases (and other appellate court decisions that announce the same rule)[4] rely upon *People ex rel. Edwards v. Livingston*, 42 Ill. 2d 201 (1969), and/or *In re Custody of Townsend*, 86 Ill. 2d 502 (1981), both of which have been abrogated by our supreme court.  *In re R.L.S.*, 218 Ill. 2d 428 (2006) (holding that fit parents are entitled to custody of their children under the Probate Act of 1975 (755 ILCS 5/11-1 *et seq.* (West 2004)).[5]  Moreover, by its plain terms, section 2-27 of the Act contemplates that a trial court may award custody to DCFS only after it has first determined that the natural parents are unfit, unwilling, or unable to care for the child. 705 ILCS 405/2-23(1)(a), 2-27(1) (West 2012); see also *K.L.S.-P.*, 381 Ill. App. 3d at 196; *G.P.*, 385 Ill. App. 3d at 500; *Ta. A.*, 384 Ill. App. 3d at 306-07; *S.S.*, 313 Ill. App. 3d at 132.

¶ 19    Moreover, although a fit parent's superior right to custody "can be superceded *** by a

_____

[4] See, *e.g.*, *In re J.J.*, 327 Ill. App. 3d 70, 77 (2001); *In re S.J.*, 364 Ill. App. 3d 432, 442 (2006).

[5] *Star R.* relies upon *J.J.*, which, in turn, relied upon *Livingston*.

9

showing of good cause or reason to place custody of the child in a third party" (*In re M.K.*, 271 Ill. App. 3d 820, 829 (1995); see also *Ta. A.*, 384 Ill. App. 3d at 307-08), a mere showing that placement with a third party might be in the child's "best interest" is not sufficient to satisfy this standard (*M.K.*, 271 Ill. App. 3d at 828 ("we cannot say the Act authorizes the removal of custody from a fit parent based solely on the best-interest-of-the-child standard. Such a holding would place a parent on equal footing with third parties and eliminate a parent's superior right to custody of his or her children.")). "If [the] best interests of the child were a sufficient qualification to determine child custody, anyone with superior income, intelligence, education, etc., might challenge and deprive the parents of their right to their own children." *M.K.*, 271 Ill. App. 3d at 820 (quoting *In re Petition of Doe*, 159 Ill. 2d 347, 351 (1994)). Under such a legal regime, "few parents would be secure in the custody of their own children." (Internal quotation marks omitted.) *Id.* Accordingly, in order to find "good cause" sufficient to overcome a fit parent's superior right to custody, the trial court must find that the fit parent is "unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or [is] unwilling to do so." 705 ILCS 405/2-27(1) (West 2012); see also *K.L.S.-P.*, 381 Ill. App. 3d at 196; *G.P.*, 385 Ill. App. 3d at 500; *Ta. A.*, 384 Ill. App. 3d at 306-07; *S.S.*, 313 Ill. App. 3d at 132.

¶ 20     We therefore deny the State's petition for rehearing. To the extent that *Star R.*, *J.J.*¸ *J.K.F.*, and *S.J.* conflict with our holding in this case, we decline to follow those cases.

¶ 21                    CONCLUSION

¶ 22   For the reasons sets forth above, we reverse the judgment of the circuit court of Peoria County and remand for further proceedings.

¶ 23   Reversed; cause remanded.