NOTICE
This Order was filed under
Supreme Court Rule 23 and
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241614-U

NO. 4-24-1614

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Mercer County |
| Petitioner-Appellee, | ) | No. 24JA3 |
| v. | ) | |
| Greg W., | ) | Honorable |
| Respondent-Appellant). | ) | Matthew W. Durbin, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appointed appellate counsel's deficient motion to
withdraw and affirmed the trial court's judgment.

¶ 2    Respondent, Greg W., appeals from the trial court's judgment in a juvenile

neglect case finding his minor child, R.W. (born in November 2022), neglected, adjudicating the

minor a ward of the court, finding him unfit and unable to care for the minor, and placing the

minor in the custody and guardianship of the Illinois Department of Children and Family

Services (DCFS). On appeal, respondent's appointed counsel has filed a motion to withdraw. We

grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    On September 17, 2024, the State filed a petition for adjudication of wardship

with respect to R.W., alleging the minor was neglected pursuant to section 2-3(1)(b) of the

Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2022)) because his environment was injurious to his welfare. Specifically, the State alleged that R.W. was living "in a home where sexual abuse allegations were made without any additional protections or precautions taken." The State attached to its petition a "Formal Request for State's Attorney to File a Petition for Juvenile Court Intervention." The attached document set forth the factual basis underpinning the allegation of neglect. According to the document, I.J., the 14-year-old daughter of respondent's paramour, accused respondent of digitally penetrating her vagina. I.J. was subsequently interviewed at the Mercer County Children's Advocacy Center, and she reported that respondent had sexually assaulted her on four or five separate occasions. DCFS found I.J.'s accusations to be credible. Respondent was also interviewed. He denied the accusations and confirmed that no protective measures had been taken to ensure I.J.'s safety. DCFS concluded that respondent's "explanations did not fit the timeline and he often provided nonsensical excuses, so his denial was not deemed to be credible." Respondent was also under investigation for allegedly sexually abusing two other minors.

¶ 5        On November 12, 2024, the trial court conducted an adjudicatory hearing. At the hearing, respondent stipulated to the State's allegation of neglect. The court accepted respondent's stipulation and entered an adjudicatory order, finding R.W. neglected on the basis he "was allowed to remain in an injurious environment pursuant to stipulation of father."

¶ 6        On December 10, 2024, the trial court conducted a dispositional hearing. At the hearing, the State informed the court that it had filed a dispositional report in anticipation of the hearing and requested the court "to adopt and to order the recommended items *** as stated in the dispositional report." According to the report, respondent was charged with two counts of aggravated criminal sexual abuse based on the same allegations which led to the opening of the

instant juvenile case, and an order entered by the trial court in respondent's criminal case prohibited him from having any contact with minors, including R.W. Respondent argued that the court should find him fit and able to care for the minor for the following reasons:

"MR. LARSON [(COUNSEL FOR RESPONDENT)]: The [respondent] is not in any way unable. He has been taking care of the child for some time, so I don't think it's a question of if he's unable. The question is whether he's unfit. The allegations against the [respondent] in a separate criminal case relate to inappropriate touching of a teenage female, not a juvenile male, and they are just, at this point, allegations, Your Honor.

So I don't believe there's enough evidence to find him unfit, and I think the child should be returned to him, Your Honor, because there's no need for him to have the child somewhere else. The child has been in his care the entire time. There's been no allegations of inappropriate behavior as it relates to this child."

The court found respondent's argument unpersuasive, finding instead that, "with the pending criminal charges, he is unable and unfit at this time." The court entered a written dispositional order making R.W. a ward of the court and finding respondent unfit and unable to care for R.W. due to "pending criminal matters relating to care of child, [and] concerns with housing."

¶ 7        This appeal followed.

¶ 8                                II. ANALYSIS

¶ 9        On appeal, appointed counsel has filed a motion to withdraw, which he asserts is in accordance with *Anders v. California*, 386 U.S. 738 (1967). Counsel argues in his accompanying brief that the dispositional findings were against the manifest weight of the evidence.

¶ 10        An appellate attorney who seeks to withdraw from representation on direct appeal

from a final judgment in a juvenile neglect case under the Act must comply with the procedure

articulated by the United States Supreme Court in *Anders*. See, *e.g.*, *In re J.P.*, 2016 IL App (1st)

161518, ¶¶ 4-8. This court has outlined the proper *Anders* procedure as follows:

> "Under *Anders*, appellate counsel's request to withdraw must, first, 'be
>
> accompanied by a brief referring to anything in the record that might arguably
>
> support the appeal.' [Citation.] In other words, appellate counsel must set out any
>
> irregularities in the trial process or other potential errors, which, although in his
>
> judgment *are not* a basis for appellate relief, might arguably be meritorious in the
>
> judgment of the client, another attorney, or the court. Second, [as to any such
>
> issue] identified, counsel must *** sketch the argument in support of the issues
>
> that could conceivably be raised on appeal, and then *** explain why he believes
>
> the arguments are frivolous. [Citation.] Third, counsel must conclude the case
>
> presents no viable grounds for appeal. [Citation.] Fourth, to enable us to properly
>
> fulfill our responsibilities under *Anders*, counsel should include transcripts of the
>
> relevant hearings." (Emphasis in original.) *In re S.M.*, 314 Ill. App. 3d 682, 685
>
> (2000).

This court has also set forth the three options a reviewing court may choose from when

confronted with an appellate attorney's motion to withdraw that fails to comply with the proper

*Anders* procedure outlined above:

> "First, we could deny the motion with prejudice and order appellate counsel to file
>
> an appellate brief. Second, we could excuse appellate counsel's inadequate
>
> motion, review the record ourselves, and then determine whether the trial court's

decision should be affirmed. Third, we could deny appellate counsel's motion to withdraw without prejudice." *In re Austin C.*, 353 Ill. App. 3d 942, 948 (2004).

¶ 11 Here, appointed counsel's motion to withdraw and accompanying brief do not comply with the proper *Anders* procedure outlined in *S.M.* For instance, counsel does not indicate whether he reviewed the trial court's finding of neglect; indeed, counsel only mentions the court's neglect finding in a single sentence located in the "Statement of Facts" section of his brief. Moreover, in the "Argument" section of his brief, counsel's only citation to authority is to set forth the standard of review. He does not include a single citation to the Act or any relevant case law. Importantly, despite moving to withdraw on the purported basis that the instant appeal contains no nonfrivolous arguments, counsel goes on to argue in his brief that the dispositional findings were against the manifest weight of the evidence. See *S.M.*, 314 Ill. App. 3d at 687 ("It should not appear appellate counsel wants to appeal on the merits and withdraw at the same time."). Counsel does not indicate whether he is arguing that the court's finding of unfitness was erroneous, whether the finding of inability was erroneous, or whether both were erroneous. Although counsel has failed to comply with the proper *Anders* procedure in numerous respects, we will nonetheless excuse his deficient motion to withdraw in the interests of judicial economy and review the record on our own to determine whether the trial court's judgment should be affirmed.

¶ 12 The purpose of the Act is to secure for each minor subject to it "such care and guidance, preferably in the minor's own home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1-2(1) (West 2022). In furtherance of its stated purpose, the Act establishes the procedures that must be followed before a minor may be removed from the custody of his parents and made

- 5 -

a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). The process begins with the State filing a petition for wardship and the trial court conducting a temporary custody hearing to determine whether there is probable cause to believe the minor is abused, neglected, or dependent. 705 ILCS 405/2-10(2) (West 2022). If the court finds probable cause to believe the minor is abused, neglected, or dependent, the minor is placed in temporary custody and the process advances to the adjudicatory hearing. *In re Z.L.*, 2021 IL 126931, ¶ 60. "At the adjudicatory hearing, the court shall first consider only the question whether the minor is abused, neglected or dependent." 705 ILCS 405/2-18(1) (West 2022). A neglected minor includes any minor "whose environment is injurious to the minor's welfare." *Id.* § 2-3(1)(b). Our supreme court has defined "neglect" as the "failure to exercise the care that circumstances justly demand." (Internal quotation marks omitted.) *In re N.B.*, 191 Ill. 2d 338, 346 (2000). "An 'injurious environment' is an amorphous concept which cannot be defined with particularity; therefore, each case should be reviewed considering the specific circumstances of that case." *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995). "[O]ur courts have interpreted 'injurious environment' to include the breach of a parent's duty to ensure a 'safe and nurturing shelter' for his or her children." *N.B.*, 191 Ill. 2d at 346.

¶ 13 "The State has the burden to prove allegations of abuse or neglect by a preponderance of the evidence." *Z.L.*, 2021 IL 126931, ¶ 61. "We will not disturb the trial court's finding of abuse or neglect unless it is against the manifest weight of the evidence. [Citation.] A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 14 Here, our review of the record shows that any argument challenging the trial court's finding of neglect would be barred by the doctrine of invited error because respondent

agreed to stipulate to the allegations in the State's petition and proceed to a dispositional hearing. "Under the doctrine of invited error, [a party] may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). "Invited error differs from mere forfeiture. A [party] might not merely forgo objecting to an alleged error but actively invite or acquiesce in it." *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44. "Thus, invited error does not raise a mere forfeiture to which the plain-error exception might apply; it creates an estoppel that precludes plain-error analysis." *Id.*; see *People v. Ramirez*, 2013 IL App (4th) 121153, ¶ 79 ("[I]nvited errors are not subject to plain-error review."); *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007) ("A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court."). Therefore, no nonfrivolous argument can be made that the trial court erred in finding R.W. to be a neglected minor under the Act.

¶ 15 If the trial court determines at the adjudicatory stage that the minor is abused or neglected, the court then moves to the next step of the procedure set forth in the Act, which is the dispositional stage. *Z.L.*, 2021 IL 126931, ¶ 60 (citing 705 ILCS 405/2-21(2) (West 2018)). "At the dispositional hearing, the trial court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court." *Id.* "Prior to committing a minor to the custody of a third party, such as DCFS, a trial court must first determine whether the parent is unfit, unable, or unwilling to care for the child." *In re M.M.*, 2016 IL 119932, ¶ 21 (citing 705 ILCS 405/2-27(1) (West 2012)). At the dispositional hearing, "[a]ll evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." 705 ILCS 405/2-22(1) (West 2022); see

*In re M.D.*, 2022 IL App (4th) 210288, ¶ 63 ("Essentially, there are no rules of evidence governing what the court may receive and consider at the dispositional hearing.").

¶ 16      "At the dispositional phase, the State bears the burden of proving unfitness by a preponderance of the evidence. [Citation.] We will not reverse a trial court's finding of unfitness, unless it is against the manifest weight of the evidence." *In re K.E.S.*, 2018 IL App (2d) 170907, ¶ 51. "A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent." *Id.*

¶ 17      Here, our review of the record shows that no nonfrivolous argument can be made that the trial court erred in finding respondent unable to care for R.W. The State presented evidence at the dispositional hearing that respondent had been charged with two counts of aggravated criminal sexual abuse and these charges led to the commencement of the instant juvenile case. Importantly, an order entered by the trial court in respondent's criminal case prohibits him from having any contact with minors, including R.W. Clearly, respondent is not able to care for R.W. if he is prohibited from even having contact with the minor. See *In re Joseph J.*, 2020 IL App (1st) 190305, ¶ 30 (noting that a "finding of inability is an independent and sufficient basis to support the court's judgment").

¶ 18                                III. CONCLUSION

¶ 19      For the reasons stated, we grant appointed appellate counsel's deficient motion to withdraw and affirm the trial court's judgment.

¶ 20      Affirmed.